Nancy H. VAN DE VATE

v.

Dr. Edward J. BOLING and the University of Tennessee et al.

Civ. A. No. 8463.

United States District Court,
E. D. Tennessee, N. D.

June 3, 1974.

John D. Lockridge, Jr., Philip P. Durand, Knoxville, Tenn., for plaintiff.

Ronald C. Leadbetter, John C. Baugh, Daniel F. B. Rhea, Arthur B. Stowers, Jr., Louis C. Woolf, Knoxville, Tenn., for defendants.

MEMORANDUM [1]

ROBERT L. TAYLOR, District Judge.

This is an action for monetary damages as against the remaining individual defendant, Alfred J. Schmied, and for injunctive relief against the defendant, University of Tennessee, for alleged violation of plaintiff's civil rights. Jurisdiction is invoked under Title 42 U.S.C. § 1981 et seq. There is a serious question, which we do not decide, as to whether the University or its agent, Dr. Schmied, may be held for monetary damages. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The theories of plaintiff, as are stated in the pre-trial order, are as follows: (1) that the defendants, under color of law, both singly and in concert, falsely, fraudulently, intentionally and maliciously discriminated against her in her efforts to gain employment in the Department of Music, solely on the basis of her sex; (2) that she has exhausted available remedies; (3) that as a result of the alleged discrimination she is entitled to damages against the individual defendant in the amount of $200,000.00; and (4) that she is entitled to injunctive relief against the University ordering the Department of Music to hire her as a fully-tenured professor, with concomitant salary, as though no discrimination had been exercised against her, and further that the Court enjoin the University from entering into contracts with the United States, or any of its extensions, until the University ceases from discriminating against her on the basis of sex.

Defendants deny that they discriminated against plaintiff on account of her sex or on any other unlawful basis in her efforts to gain employment in the Department of Music. They deny that she has suffered any damages or that she is entitled to either punitive damages or injunctive relief. They further rely upon the technical defenses of governmental immunity, exhaustion of remedies, statutes of limitation, and renew their motion to dismiss on these grounds. For the reasons heretofore stated in its memorandum of January 31, 1974, overruling the first motion to dismiss, the Court sees no reason to change its opinion on these matters.

Although a number of legal, as well as factual, issues were set forth in an order pursuant to pre-trial, the only remaining issue is: Did the defendants, or either of them, discriminate against the plaintiff in their refusal to hire her solely on the basis of sex in violation of the United States Constitution, or any applicable federal law or regulation?

Prior to trial, the parties entered into a stipulation, which, in the main, states that (1) at all times pertinent herein, the defendant, Alfred Schmied, was an agent, servant and employee of the University which acquiesced in and ratified his actions regarding plaintiff; (2) the University is a federal contractor and is subject to the provisions of Executive Order 11246, all amendments thereto, and all applicable regulations issued thereunder; (3) if the plaintiff shows that she, individually, was discriminated against on the basis of sex, that a prima facie case is made out under Title 42 U. S.C. § 1983.

At the outset the Court observes that plaintiff is entirely competent, and even excellent, in the field of music. The evidence shows that Mrs. Van de Vate studied piano in New York, attended Eastman School of Music, and received an A.B. degree in Music Theory from Wellesley College in 1952. She further received a Mus.M. degree from the University of Mississippi in 1958 and in 1968 was awarded a Mus.D. degree in Music Composition by the Florida State University. She has a great deal of teaching experience and has participated, either individually or in conjunc-

1. This memorandum incorporates and is substituted in lieu of the memorandum as dictated from the bench after a hearing was held on the merits on May 21, 1974.

tion with others, in the publication of numerous articles and musical compositions. All parties have stipulated to her excellent professional qualifications.

The evidence shows that in 1966 plaintiff had been teaching music theory [2] at Memphis State University for a period of two years. Due to the fact that her husband was joining the staff at the University of Tennessee, she made application in a letter to defendant, Schmied, for a position, either part-time or full-time. In January 1967, the University, upon Dr. Schmied's recommendation, hired plaintiff as a temporary, part-time instructor in the department. She was primarily responsible for teaching a "trailer" course in theory [3] for the Winter quarter and further instructed an individual female student in piano. This work, under the terms of her employment, continued through the Spring and terminated at the end of that quarter.

During the Summer of 1967, she continued work on her doctorate degree, during which period she had numerous contacts with the Department of Music personnel, viz., a choral symposium sponsored by the Southeastern Composer's League, of which she was an officer. She testified that during both the prior period of employment at the University and during the following Summer she had heard no criticism or any other adverse remarks concerning her professional skills.

During the academic year 1967–68 plaintiff completed her dissertation, received a Mus.D. degree from Florida State University. From 1966 to 1968 she had contact with several schools concerning employment, and in the Spring of 1968 was hired by Knoxville College for the academic year 1968–69 to fill a temporary vacancy in their music department. At the end of her term, she was offered another position at Knoxville College but chose not to accept it on the ground that it was not within her special field of study.

In November 1969 Mrs. Van de Vate reapplied, through Dr. Schmied, for a position in the Music Department but was verbally informed that there were no openings. The conversation that was occasioned by this November meeting lasted approximately 1½ hours, the substance and import of which are disputed by the parties.

It is clear that plaintiff and Dr. Schmied discussed the termination of one Mrs. Howard, who had been a teacher of plaintiff's daughter. Notwithstanding the precise nature of the subject matter discussed, defendant Schmied testified that plaintiff berated him for not giving Mrs. Howard temporary facilities within which to work until she found substitute ones. Plaintiff stated that it was her impression that the tone of the conversation was routine.

Defendant also stated that plaintiff complained sharply of the failure of her compositions to be performed in the Knoxville area. He further testified that she next "heatedly" questioned why the defendant had employed two men and not her during the period 1966–1969 when she felt that her application was a continuing one. Defendant then stated that he felt it improper for some third party to tell him how to run his department.[4]

2. Plaintiff explained to the Court that music theory is the foundation of music composition and encompasses the skills of music composition, how much sounds and how it is put together.

3. A "trailer" course is designed to allow students who have failed a course that is a sequential prerequisite in their major field of study to make such course up during an alternate quarter. This in turn enables such a student to catch up or at least not fall

hopelessly behind in meeting the academic requirements of his major.

4. The record shows that positions in the department are filled on a need basis. That is, when a staff member reports a need in an area of study, the department head investigates. If the budget permits and if the need is deemed necessary to fill then the department head canvasses for applications and applicants are interviewed. Sometimes the prospective applications are reviewed by

In any event, defendant advised Mrs. Van de Vate that there was no job opportunity available in the department at that time or in the future. On December 4, 1969, Dr. Schmied advised plaintiff by letter that after consideration by the staff, " . . . the Department is in need of a different combination of teaching areas and performance." The proof shows, however, that her application was never in fact presented to the staff, but this factor, in light of the record as a whole, is not determinative.

Sometime later, defendant reconsidered his prior position taken regarding plaintiff. He testified, however, that the contact he had with the staff and other individuals indicated that he could not employ her in the department.

Plaintiff reapplied on April 20, 1971, after she and her attorney had met with defendant, Dr. Schmied, and the attorney for the University to discuss the reasons for her non-employment. (See Exh. No. 8) Again, Dr. Schmied advised plaintiff by letter of April 28, 1971 that no position was available

Dr. Schmied categorically denied that the fact plaintiff was a woman had any bearing on his decision. He testified that the only instance where the sex of a person has had any bearing involved the filling of certain singing positions, such as soprano. He further stated that the reason plaintiff was not rehired was because of her personality, and that he felt she would not fit in with the staff of the department.

Thus, one of the questions that must be alluded to and passed on before a final decision is made is whether or not plaintiff is the kind of person who is unable to get along with her fellow persons. Bright people, as the Court often observes, have ways that are not easily understood. This is as true in the legal profession as it is in the area of music.

Whether Mrs. Van de Vate has those ways, we need not decide.

The point to be made, however, is that there is a diversity of opinion among those whose testimony has been received on the question of whether plaintiff could get along with people. While that issue may be incidental for some purposes, it does bear on the question of whether she was discriminated against because she is a woman.

There were a number of witnesses, including Dr. Schmied, who testified in substance that plaintiff was not a person with whom people could get along; that she caused, or may have caused trouble both at the University and at Knoxville College. There was also testimony to the contrary by witnesses with whom plaintiff was a friend. The Court need not determine whether she did or did not cause such troubles. Indeed, it pains the Court to deal with testimony of this character relating to a lady of her professional standing and her demeanor before this Court.

On the other hand, Dr. Schmied impresses the Court as being of equal credibility and demeanor, and what he did in relationship to plaintiff was done because he thought it was right.

█ In light of the testimony as a whole, the Court is constrained to conclude that the action taken by the individual defendant, Schmied, and the University of Tennessee was a result of a personality clash between the individuals involved, and nothing more. There is no evidence in this record to indicate that plaintiff's sex had anything whatever to do with the decision not to employ her. To the contrary, the evidence demonstrates that the department, as well as other officials of the University, made efforts to hire personnel on the basis of their qualifications for the specific duties to be performed and their ability to

---

the entire staff and sometimes they are not. In any event, after a screening, a person is chosen by the department head. The actual hiring, however, is handled by the Vice-Chancellor. In this case, Professors Smith

and Pederson were hired in 1967 and 1968 to fill specific needs. The former was hired before plaintiff had received her doctorate degree, the latter was hired for his expertise in the area of computerized music.

fit in with the staff of the department. Such hirings were also done in light of departmental interpretations of applicable University regulations.

 It is not a court's prerogative to interject itself into the educational institution and to require such institution to either hire or not hire a professor. While such an institution cannot be permitted to refuse employment on unlawful and impermissible grounds, its exercise of discretion in refusing to hire an applicant because it is felt that such person could not harmoniously perform his or her duties should not be disturbed by a court in an action of this character. Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969) cited with approval in Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971). See also, Watts v. Board of Curators, University of Missouri, 363 F.Supp. 883 (W.D.Mo.1973).

It is elemental that before a plaintiff can succeed he must establish a prima facie case of discrimination on impermissible grounds. See Orr v. Trinter, supra. This plaintiff has failed to do.

Plaintiff argues, however, that a careful reading of Executive Order 11246, as amended by Executive Orders 11375 and 11478, and 29 C.F.R. § 1604.2 compel a different conclusion. It is argued that particularly under Title 29 C.F.R. § 1604.2(a)(1)(iii) and § 1604.2(a)(2) a refusal to hire an individual because of preferences of coworkers or of the employer is impermissible. With all due deference to counsel, we conclude that the regulation is not in point. The Court interprets the regulation to deal specifically with an attempt on the part of an employer to justify his use of sex as a bona fide occupational qualification once a classification has been made along sexual lines. As we understand the import of actions brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) or under Title 42 U.S.C. § 1981 et seq., it is incumbent upon the plaintiff to first establish a prima facie case of discrimination on the basis of sex. If

he or she fails to do so, the case is at an end. On the other hand, if plaintiff meets that burden, defendant must come forward with evidence to justify why such classification was made. See Hodgson v. First Federal Sav. and Loan Ass'n, 455 F.2d 818 (5th Cir. 1972); see also Long v. Ford Motor Company, 496 F.2d 500 (6th Cir. 1974); Orr v. Trinter, supra. Since plaintiff has not established a prima facie case of discrimination on the basis of sex, she cannot rely upon the Executive Orders and the regulations herein cited to otherwise establish her case. Furthermore, it would appear that the term "preferences" as used in § 1604.2 of the regulations refer to preferences on the basis of sex and not personality preferences. However, we need not here finally determine that issue.

Accordingly, for the reasons heretofore set forth, plaintiff's action is dismissed.