Lewis D. BISHOP, Appellant,

v.

KEYSTONE AREA EDUCATION AGENCY NUMBER 1 and the Individual Members of the Board, Raymond Bodensteiner, Kenneth J. Schultz, Bill Withers, Marybeth Jaggard, Reuben A. Hoth, James K. Cramer, Eugene J. Tully, Edward R. Duesing, and John F. Ganshirt, Appellees.

No. 60728.

Supreme Court of Iowa.

Feb. 21, 1979.

**746**

James L. Sayre of Dreher, Wilson, Adams & Jensen, Des Moines, for appellant.

William C. Fuerste and Allan J. Carew of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, HARRIS, and ALLBEE, JJ.

UHLENHOPP, Justice.

This appeal involves the right of an individual employed by a former joint county school system to preference in employment by an area education agency (AEA) under 65 G.A. ch. 1172, § 11.

In 1974 the legislature enacted a statute which supplanted county and joint county school systems with geographically larger area education agencies. 65 G.A. ch. 1172. See Code 1977, ch. 273. The legislature did not grandfather staff members of the former systems into the AEAs in the conventional way, yet it did not leave staff with no protection at all. It included § 11 as part of the Act (this section, being temporary, was not codified):

*Employment of county school system and joint county system personnel.* In employing personnel, the area education agency board shall give preference to qualified personnel who seek employment with the area education agency because their employment by county school systems and joint county systems will be terminated on July 1, 1975. Sick leave and vacations accrued by the employee shall be carried over to his employment by the area education agency board. Any employee of an area education agency who was a member of a public retirement system of a school district or county system, other than the Iowa public employee's retirement system established in chapter ninety-seven B (97B) of the Code, shall, if the employee elects in writing to the area education agency board, continue to be a member of that retirement system. Employer contributions required by the retirement system shall be made by the area education agency board.

In § 3 the Act created boards with authority to govern the AEAs. Section 4(12) of the Act provided that each board shall Employ such personnel as may be required, if any, to carry out the functions of the area education agency . . . .

That section also provided:

The provisions of section two hundred seventy-nine point thirteen (279.13) of the Code shall apply to the area education

agency board and to all certificated school employees of the area education agency.

(At the time § 279.13 provided the procedure for nonrenewal of public school teachers' contracts.)

Mr. Lewis D. Bishop was a veteran staff member of the Fayette-Chickasaw Joint County School System, practicing his profession as a hearing clinician. Under the record no one could question Mr. Bishop's extraordinary competency as a hearing clinician. Several witnesses testified to this. One witness, a former colleague, testified, "I have come, through the years, to believe Lew Bishop is, bar none, the best audiologist I have ever encountered. I have encountered quite a number of them." Mr. Bishop holds a bachelor's degree, a master's degree in his field, and proper certificates from the Iowa Department of Public Instruction. He has had a number of years' experience as a hearing clinician, and he is an energetic worker.

Evidence was introduced that Mr. Bishop possesses a distressing personality trait—that he is undiplomatic, impolitic, and completely direct. According to this evidence he sees his view on an issue very clearly and he presents it forcefully; he sometimes polarizes colleagues causing dissension, whereas the work of the county systems and now the area systems requires team effort in helping children; he occasionally cuts across or ignores regular administrative channels; and he thus upsets his superiors and causes resentment and personnel problems.

Fayette and Chickasaw Counties merged with other counties in northeast Iowa to form AEA 1, called Keystone Area Education Agency. Upon establishment of the agency its line of administration ran, so far as a hearing clinician is concerned, like this as nearly as we can ascertain from the record: from the board to the Administrator, Richard L. Hansen (below him was Administrative Assistant Steven Bobst), to the Director of Special Education, Eugene Pratt (below him was Assistant Director of Support Services Ray DeNeve), to the Supervisor, Clayton Johnson, and to the hearing clinicians. Mr. Hansen had been county superintendent and Mr. Bobst had been an administrative officer in the Fayette-Chickasaw system.

When the merger was in process, this prospective administrative staff established a procedure for interviewing staff members of merged county systems and others who desired to go with Keystone. Mr. Bishop formally applied for employment by Keystone as a hearing clinician. The application contained the required documentation as well as commendations. Keystone had a hearing clinician position open and indeed has kept it open awaiting the outcome of this litigation.

Evidence was adduced that Messrs. Hansen and Bobst had experienced problems with Mr. Bishop in the Fayette-Chickasaw system. Considerable feeling existed between Mr. Bobst and Mr. Bishop, perhaps originating when Mr. Bobst sought and obtained an administrative post in that system to which Mr. Bishop aspired.

As prospective administrator of Keystone, Mr. Hansen drafted a document, later approved by the board, regarding application of § 11 of the Act on preference for employment. The document read:

Personnel employed by a county or joint county school system within the boundaries of Area Education Agency # 1 during 1974–1975 shall be subject to the provisions of Section 11 of Senate File 1163, as enacted by the 65th General Assembly and interpreted by this policy.

An individual employed heretofore by a county or joint county school system shall be given preference as a candidate for a position authorized by the Board of Directors for 1975–1976 over an equally qualified candidate who had not been employed by a county or joint county school system during 1974–1975. The Administrator shall provide the Board of Directors with information regarding the qualifications of the candidates and shall advise as to the criteria utilized in administrative determinations regarding the qualifications.

The Board of Directors shall decide the qualifications of any candidate for an authorized position and whether the candidate's qualifications establish eligibility for preferential consideration. The Board of Directors shall not be precluded from selecting the candidate for a particular position who is determined to be the most qualified for the position, and preference shall only be applicable to a candidate who is equally or more qualified than another candidate for the position.

Two other employment criteria which were used were the applicant's relationship with his prior employer and his qualities of "cooperation-coordination". The board later approved cooperation-coordination "as one of the criteria for determining an AEA employee's qualifications."

In connection with Mr. Bishop's application for employment by Keystone, Mr. Johnson interviewed Mr. Bishop and he also conferred with Messrs. Hansen and Bobst about Mr. Bishop. Mr. Bobst endorsed upon Mr. Bishop's application, "I would resist the employment of Lew with all the resources available to prevent his employment. He will be a detriment to the program as long as he is employed." A form was also attached to Mr. Bishop's application in the interview period. On the form was written:

1. Lack of ability to work with fellow staff members.

2. Reported difficulty accepting administrative decisions.

Subsequently Mr. Johnson wrote a letter to his superior, Mr. Pratt, of which the following is pertinent:

Mr. Bobst and Mr. Hansen report that Mr. Bishop defines his role in a rather limited manner. Mainly, they report a history of difficulty in working as a team member with fellow special education professionals. Mr. Hansen has documentation of a history of these difficulties. Because of these serious reports from his present employer, I would have to question Mr. Bishop's effectiveness as a working team member in the Area Educational Agency. Because I have not had op-

portunity to observe him as a team member I do not feel I am qualified either to recommend or not recommend him for employment with our Agency. I am asking you to evaluate his credentials and discuss these serious complaints with his present employer and make your recommendation to the Area I administrator based on your judgments.

Thereafter Mr. Pratt wrote his superior, Mr. Hansen, in relevant part as follows:

You should be advised that Mr. Johnson has conferred with both Mr. DeNeve and I on the matter of Mr. Bishop's employment. Based upon his review of the interview data, and subsequent professional impressions, I must concur with his statement regarding Mr. Bishop's effectiveness as an AEA team member. I ask that you seriously consider informing Mr. Bishop that he has not received a positive recommendation for AEA employment for the 1975–76 school year; and, further, I recommend that he not be considered for employment in the Special Education Division in AEA 1.

Mr. Bishop was informed that he would not be recommended by the administration.

At the board's May 1975 meeting Mr. Hansen presented a list of applications for staff positions in Keystone. Several of these including Mr. Bishop's were "subject to further information or consideration," and action on these was tabled until the June board meeting.

The board did not reach the agenda item on personnel until its July meeting. Meanwhile Mr. Bishop had contacted the Iowa State Education Association about his problem, and a teacher representing the northeast Iowa branch of ISEA attended the June meeting. Two teachers representing that branch attended the open portion of the July meeting. At that meeting the board considered six personnel recommendations from the administration, and other business. Recommendation number 3 stated:

RECOMMENDATION # 3—that the board formally decline to issue a con-

tract offer to Lew Bishop, a hearing clinician, for 1975-1976 and to formally deny "preference" insofar as he is not "qualified" in the board's judgment. *Comment: Legal counsel has advised that only the board can determine if an individual's qualifications establish eligibility for preference. Various criteria can be utilized in judging qualifications, but the recommendation has been premised on his past performance in functioning in cooperation and coordination with schools, other program personnel, and the administration. Any discussion of this recommendation should be pursued in closed session.*

When the board arrived at Recommendation 3 the following occurred, according to the board's minutes:

Ganshirt moved that the Board go into executive session to discuss Recommendation # 3 to prevent needless injury to the reputation of an individual whose employment is under consideration. Seconded by Withers. The President called for a roll call vote: Ayes—Bodensteiner, Cramer, Ganshirt, Hoth, Jaggard, Schultz, Withers. Nayes—None.

A closed meeting was then held. The minutes of that meeting are as follows:

The Board of Directors of Area Education Agency No. 1, Administrator Hansen, and Assistant Administrator Koppen met in closed session on July 21, 1975 in accordance with a motion duly adopted during the regular session on that date and recorded in the minutes of that meeting.

Administrator Hansen advised that Recommendation # 3 of Personnel Considerations, as submitted for Board consideration on July 21, 1975 had been premised on (1) the preference provision for qualified personnel in S.F. 1163 and (2) a previous board discussion regarding the qualifications for AEA employees. Hansen reaffirmed his recommendation that the ability to function in cooperation and coordination with the program administration, coworkers and the schools be considered in determining the qualifications of an AEA employee. Hansen further advised that Lew Bishop's application for a hearing clinician's position had been received and considered, but that he has not been considered equally qualified with the other candidates for hearing clinician positions because of the cooperation/coordination criteria for determining qualifications.

A discussion developed wherein the board members indicated agreement with the inclusion of cooperation/coordination as one of the criteria for determining an AEA employee's qualifications. The remainder of the discussion was devoted to incidents and reports that reflected on the administrator's recommendation that Mr. Bishop not be considered qualified in the board's judgment.

On a motion by Ganshirt, seconded by Withers, the closed session was terminated and the board returned to regular session.

The minutes of the open meeting then state:

At close of executive session, Hoth reconvened the regular meeting. Motion by Ganshirt, second by Jaggard, that Recommendation # 3 be adopted. Carried.

Testimony at the subsequent trial shows that the board found Mr. Bishop unqualified largely on the basis of (1) Mr. Hansen's report of poor cooperation and coordination and (2) the views of two board members who had personal familiarity with, and had heard reports of, dissension involving Mr. Bishop. Apparently after the closed meeting at least one of the observers from ISEA's northeast branch was asked whether she had any questions, and she did not.

After Mr. Bishop learned of the board's decision he brought this suit under the statutory preference to obtain the position of hearing clinician which was open. He also prayed "for such other orders as the Court may deem necessary to compel the fulfillment of the Defendants' duties as the Court may deem just and equitable. . . ." After trial, the trial court held for the board. Mr. Bishop appealed.

The parties argue a number of contentions but the following issues are controlling: What preferential right does the statute provide? Does the preferential right entitle an applicant from a county school system to procedural due process of law? What procedural steps satisfy due process? Did Mr. Bishop waive his due process rights?

■ I. *Preferential Right.* Our endeavor of course is to ascertain what the legislature intended by § 11 of the Act and to give effect to that intent. *State v. Prybil*, 211 N.W.2d 308 (Iowa). Reading the section as a whole, we think the legislature intended to give county school employees some protection in the transition to area systems. Not only does the section state in mandatory terms that the area board "shall give preference to qualified personnel who seek employment" because "their employment by county school systems will be terminated," but the section goes on to preserve their benefits. "Sick leave and vacations accrued" are continued, as is a person's membership in a public retirement system other than IPERS. (IPERS membership would of course continue.) The legislature contemplated continuity for qualified personnel where openings existed, with minimal disruption of their careers.

■ The problem arises from the word "qualified". The parties hold opposing views about this word, but we think legislative intent is somewhere between. The board contends that it has discretion to say who is qualified. We can adopt that position in only a limited way. The board is in the education enterprise, and we agree that on educational questions it may and must use its best judgment on the issue of an individual's qualifications. Its discretion however is not unbridled. An objectively reasonable educational basis must exist for its determination that a given individual is or is not qualified. The board also believes that an otherwise qualified county staff member loses his preference if a more qualified outside individual applies. We doubt this view expresses legislative intent. It would jeopardize the preference of any

county staff member; someone better qualified might always come along. Rather than making "qualified" a matter of degree, we think the legislature contemplated a reasonable level of qualification, with the county staff member to have preference if he meets that level. Cf. *Zanfes v. Olson*, 232 Iowa 1169, 7 N.W.2d 901. The AEA administration might like to staff the new agency with the most qualified individuals available, but § 11 does not state that the preference applies only if no one more qualified applies; it gives preference to county staff members who are "qualified".

■ On the other hand, Mr. Bishop takes a much narrower view of qualified. He believes an individual has an absolute preference who (1) is a county staff member, (2) has the requisite academic credentials, and (3) holds a proper certificate from the State Department of Public Instruction.

This view is too restrictive. Certification is of course essential and it is evidence of qualification. *Collins v. Wakonda Independent School Dist. No. 1*, 252 N.W.2d 646 (S.D.). But the record shows that AEA staff members work with various local school administrators and with local teachers who minister to children needing special help. Moreover, the area staff functions in teams. AEA boards could reasonably conclude that a certain amount of cooperation and coordination among its staff members is essential for proper functioning, and that these characteristics may be considered in determining whether an applicant is qualified. See *Hibbs v. Board of Education of Iowa Central Community College*, 392 F.Supp. 1202 (N.D.Iowa).

The federal courts have had experience with the term qualified under the statute giving qualified veterans assurance of their old jobs. 50 U.S.C.A. App. § 308 (current version 50 U.S.C.A. App. § 459). In that context the courts have recognized various jobs involve the cooperation element. The leading case is *Trusteed Funds, Inc. v. Dacey*, 160 F.2d 413, 420–421 (1 Cir.). There the trial court found the individual qualified. The Court of Appeals stated:

Prior to making such finding the court had ruled that 'qualified' under [the statute] 'means simply physically and mentally qualified'. We think more is required than that, and we agree with the conclusion of Judge Chesnut in *McClayton v. W. B. Cassell Co.*, D.C.Md.1946, 66 F.Supp. 165, 170, that 'the position of a managerial officer of a corporation requires mental and temperamental elements consistent with harmonious relations and mutual trust and confidence on the part of the several managers who must work together.'

See also *Green v. Tho-ro Products, Inc.*, 232 F.2d 172 (3 Cir.); *Lehner v. Crane Co.*, 448 F.Supp. 1127 (E.D.Pa.); *Greathouse v. Babcock & Wilcox Co.*, 381 F.Supp. 156 (N.D. Ohio); *Brotherhood of Ry. & Steamship Clerks v. Railway Express Agency, Inc.*, 137 F.Supp. 653 (S.D.Ohio), aff'd, 238 F.2d 181 (6 Cir.); *Bozar v. Central Pa. Quarry, Stripping & Constr. Co.*, 73 F.Supp. 803 (M.D. Pa.); Annos. 29 A.L.R.2d 1279, 1295 et seq., 167 A.L.R. 124, 135. Because of the necessary teamwork among AEA staff members and the continual contact with administrators and teachers of local school systems, we conclude that boards may consider cooperation and coordination in determining whether an individual is qualified to be a staff member.

Yet "cooperation" and "coordination" are general, almost abstract words. A person either does or does not possess a certificate as a hearing clinician, but whether he cooperates and coordinates sufficiently to be "qualified" is a subjective determination susceptible to abuse. A determination of "unqualified" predicated on lack of cooperation and coordination should not rest on mere generalities, conclusions, or rumors. It should rest solidly on objective evidence genuinely demonstrating want of those attributes.

If Mr. Bishop was qualified within the parameters we have outlined, the board had to hire him, otherwise it did not. The next question is, what procedural steps did the board have to take in determining qualification? This takes us into the due process issue.

II. *Due Process.* This is not the usual case in which a board refuses to renew a teacher's contract. We have recently held that the due process clause can come into play there. *Keith v. Community School Dist. of Wilton*, 262 N.W.2d 249 (Iowa). If Mr. Bishop had been hired by Keystone, the conventional termination situation might have later arisen by virtue of § 12 of the Act making then § 279.13 of the Code applicable to AEA staff. Mr. Bishop had not yet been employed by Keystone, but he was not in the position of a stranger approaching that employer. He was a staff member of an absorbed joint county system and he came bearing the preference § 11 gives such members. When such a staff member applies to an AEA for an open position and possesses the requisite formal credentials in terms of degrees and certification, does the § 11 preference give the applicant an "interest" of sufficient moment that procedural due process is implicated? Or may an AEA board simply place the item on its agenda, consider the item in closed meeting, and deny employment to the applicant as "not qualified"?

Among the procedural due process cases in this area are *Ross v. City of Des Moines*, 249 N.W.2d 648 (Iowa); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, reh. den. 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811; *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18; *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; and *Brouillette v. Board of Directors of Merged Area IX*, 519 F.2d 126 (8 Cir.). We have examined these and other decisions and agree with Mr. Bishop that the § 11 preference gives him a right of sufficient magnitude to involve due process under the Federal Fourteenth Amendment and § 9, Article I, of the Iowa Constitution. We do not rest this conclusion upon stigma attaching to the rejection of Mr. Bishop's application for employment, but upon the value of the preferential right

itself. In the *Ross* case we held that disabled firemen's reassignment to light duty necessitated observance of due process because the firemen then had to put in their time to get paid. We are unable to differentiate the *value* of the "right" in *Ross* from the preferential right here. Procedural due process must be afforded an applicant in Mr. Bishop's situation.

III. *Procedure for Due Process.* The procedure employed by this board did not satisfy due process requirements. Applying for employment with the qualifications he did possess, Mr. Bishop was entitled to a fair hearing prior to a decision by the board. The statute does not prescribe the procedure, hence we are left to general principles of due process. The United States Supreme Court considered such principles in the *Mathews* and *Goldberg* cases as well as in *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515, and *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725. The United States Court of Appeals for this circuit considered the requisites of procedural due process in a teacher-termination proceeding which was not statutorily structured:

> Minimal requirements of due process are generally recognized to be: (1) clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them; (2) notice of both the names of those who have made allegations against the teacher and the specific nature and factual basis for the charges; (3) a reasonable time and opportunity to present testimony in his or her own defense; and (4) a hearing before an impartial board or tribunal. *Brouillette v. Board of Directors of Merged Area IX, supra*, at 128.

Applied to board determination of whether the statutory preference requires employment of Mr. Bishop for the open position, we hold that at a minimum Mr. Bishop must be given (1) sufficiently specific advance notification of the reasons his application is in question to enable him to respond with evidence; (2) the names of the individuals whose evidence purportedly supports those reasons; (3) a reasonable time and opportunity to present his own evidence; and (4) an impartial forum. While the board must provide Mr. Bishop a fair hearing, it need not proceed with the formalities of a common-law trial.

We have special concern here regarding the requirement of an impartial forum. See *Keith v. Community School Dist. of Wilton*, 262 N.W.2d 249 (Iowa). This same board has once found Mr. Bishop unqualified. The board must, like a trial court on reversal, lay that finding aside. Any board member who harbors prejudice or predilection should recuse himself or herself. Board members possessing personal knowledge must place it aside or, if they are unable to do so, themselves step aside. The board must be mindful that the decision turns on its own finding of the presence or absence of qualifications and not on the recommendation of an administrator or prior employer—although these may of course be received and considered. In judging the application the board must be awake to the prior antagonistic relationship between Messrs. Bobst and Bishop and of the close vocational relationship between Messrs. Hansen and Bobst. It must be conscious of the fact of life that present Keystone staff may be reluctant to take a position contrary to the views of their administrators, who recommend hiring and firing to the board. It must take cognizance of the other circumstances presented which are pertinent to judgment on Mr. Bishop's qualifications or lack of qualifications. Of course, the board may not consider Mr. Bishop's exercise of constitutional rights, including free speech. See *Givhan v. Western Line Consolidated School Dist.*, 99 S.Ct. 693, 58 L.Ed.2d 619 (U.S.); *Zoll v. Eastern Allamakee Community School Dist.*, 588 F.2d 246 (8 Cir.). In sum, the board must be an impartial arbiter.

IV. *Waiver.* Mr. Bishop knew that the board held monthly meetings, that he had not been recommended favorably by the administrators, and that the board would take up his case. The problem of his case was before the northeast Iowa branch

of ISEA, and teacher-representatives of the branch attended board meetings, apparently as observers, although they did not observe the closed meeting in which the board considered Mr. Bishop's case. On the other hand, Mr. Bishop does not appear to have engaged legal counsel at that time, nor does he appear to have stayed away from board meetings under legal advice. He testified:

Q. Did you ever ask to be heard before the Board because of your concern about being in limbo? A. I never realized it was a prerogative of mine.

Q. What didn't you realize was a prerogative of yours, Mr. Bishop? A. I had no way of knowing what—if I showed up, what sort of welcome I might have, what sort of thing would be involved. I had met with Mr. Hansen occasionally. He mentioned nothing.

Several cases dealing with waiver are distinguishable, among them *Fern v. Thorp Public School*, 532 F.2d 1120, 1131 (7 Cir.) ("We refer to the fact that the plaintiff declined to pursue his claim in a hearing, an opportunity offered to him by the defendants."); *Satterfield v. Edenton-Chowan Bd. of Education*, 530 F.2d 567, 571 (4 Cir.) ("At the hearing, the plaintiff was not denied the right either to testify himself or to call witnesses in his behalf. He was offered the opportunity to question the witnesses heard by the Board. He had a full opportunity to assail the charges against him, either by cross-examination of the witnesses heard by the Board or by his own testimony or that of others."); *Birdwell v. Hazelwood School Dist.*, 491 F.2d 490, 494–495 (8 Cir.) ("He was aware of the time and the place of the Board meeting, that his continued employment was at stake, and that his dismissal was being recommended because of his statements in class and his actions towards the servicemen in the building. Nevertheless, with this knowledge, and after conferring with legal counsel, it was his decision not to attend the meeting."); *Jawa v. Fayetteville State University*, 426 F.Supp. 218, 230 (E.D.N.C.) ("Plaintiff, with the advice of counsel waived his right to his administrative hearing."). Contrast *Hostrop v. Board of Junior College Dist. No. 515*, 523 F.2d 569 (7 Cir.), cert. den. 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208.

Waiver is the intentional relinquishment of a known right. *Continental Cas. Co. v. G. R. Kinney Co.*, 258 Iowa 658, 140 N.W.2d 129. Waiver does not appear here.

We thus set aside the board's finding that Mr. Bishop is not qualified and its decision refusing to employ him, as wanting in procedural due process. Within 90 days of procedendo the board must either (a) employ Mr. Bishop as a hearing clinician or (b) hold a hearing conforming to due process, make a new finding on whether Mr. Bishop is or is not qualified as we have construed that term, and employ him or deny him employment accordingly.

REVERSED.

All Justices concur except REYNOLDSON, C. J., who concurs in result, and LeGRAND, J., who dissents.