Lewis D. BISHOP, Appellant,

v.

KEYSTONE AREA EDUCATION AGENCY NO. 1 and the Individual Members of the Board, Raymond Bodenstiner, Kenneth J. Schultz, Bill Withers, Marybeth Jaggard, Rubin A. Hoth, James K. Cramer, Eugene J. Tully, Edward R. Duesing, and John F. Ganshirt, Appellees.

No. 64191.

Supreme Court of Iowa.

Oct. 21, 1981.

James L. Sayre of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for appellant.

William C. Fuerste and Allan J. Carew of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, and Leo A. McArthur, Dubuque, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and LARSON, JJ.

LeGRAND, Justice.

This case involves the right to hiring preference afforded employees of county school systems upon creation of area educational agencies to replace those systems. 65th G.A. ch. 1172, (see Code 1977 ch. 273).

Plaintiff, Lewis D. Bishop, had been employed for a number of years as an audiologist in the Fayette-Chickasaw joint county school system. When this system became part of Keystone Area Education Agency No. 1 (Keystone), the legislature granted preference to qualified employees of Fayette-Chickasaw in staffing Keystone. The Board of Directors of Keystone refused to employ plaintiff. He brought this mandamus action to compel them to do so.

Plaintiff asserts he is entitled to preference by virtue of this statutory provision:

*Employment of county school system and joint county system personnel.* In employing personnel, the area education agency board shall give preference to qualified personnel who seek employment with the area education agency because their employment by county school systems and joint county systems will be terminated on July 1, 1975.

This preference is found in section 11, Acts of the 65 G.A. ch. 1172. Because it was temporary and had only one-time application, this section was not codified. For this same reason, the present case is important only to the parties. It is unlikely anyone else will be affected by this statute.

The case had been here once before. *See Bishop v. Keystone Area Education Agency No. 1, et al,* 275 N.W.2d 744 (Iowa 1979) (*Bishop* I). We reversed, not on the merits, but because Keystone had not afforded plaintiff due process in reaching its decision against employing him. We said there:

We thus set aside the board's finding that Mr. Bishop is not qualified and its decision refusing to employ him, as wanting in procedural due process. Within 90 days of procedendo the board must either (a) employ Mr. Bishop as a hearing clinician or (b) hold a hearing conforming to due process, make a new finding on whether Mr. Bishop is or is not qualified as we have construed that term, and employ him or deny him employment accordingly.

275 N.W.2d at 753.

On remand, Keystone elected to proceed under option (b). Almost immediately a new problem arose. Plaintiff had sued Keystone and its individual board members in federal court. It seemed unlikely, therefore, that Keystone could provide an impartial forum in conducting the new hearing, a matter about which we had expressed concern in *Bishop* I. *Id.* at 752.

Recognizing this, the parties made joint application to this court asking instructions on the procedure to be followed. We entered an order directing the Chief Judge of Judicial District I to appoint one of the judges of that district to act in lieu of the board in conducting the due process hearing on plaintiff's right to employment. We also directed that any appeal should be taken to this court. This procedure met with the approval of the parties.

This, in turn, spawned another problem about which the parties have continued to disagree: the scope of our review, a matter we discuss later.

The Honorable Joseph C. Keefe was appointed to conduct the hearing, which extended over a number of days and produced a voluminous record. He found plaintiff was not qualified for the position of audiologist. Plaintiff appealed, raising two is-

sues. First, he contends that Judge Keefe, sitting as the board, erred in determining that the plaintiff was not a qualified person entitled to preference under section 11, Acts of the 65th G.A. ch. 1172. Second, he argues Judge Keefe, sitting as the board, erred in finding plaintiff "unqualified" on grounds which violated his right of free speech and his right to equal protection under the law.

Before reaching the merits, two preliminary matters demand attention. We have already referred to one—the scope of our review. The other is plaintiff's insistence Judge Keefe improperly placed the burden of proof on him rather than Keystone. We consider these now.

## I. *Scope of Review.*

■ This action was brought as a mandamus action under chapter 661, The Code. It is triable in equity. § 661.3, The Code. Review is de novo. Iowa R.App.P. 4. Difficulties arise because of the unique manner in which the case proceeded pursuant to our order establishing guide lines, both for the hearing on remand and for subsequent appeal.

This is not the usual appeal in school controversies such as *Board of Education of Ft. Madison Community School District v. Youel,* 282 N.W.2d 677 (Iowa 1979) (termination of teacher's contract) or *Briggs v. Board of Directors of the Hinton Community School District,* 282 N.W.2d 740 (Iowa 1979) (termination of school administrator's contract). The present question is one of hiring, not firing. We deal here with an appeal in a mandamus action. Ordinarily the Keystone board of directors would have conducted the hearing. The district court would then have reviewed the board's action on the mandamus petition by determining if it had abused its discretion by acting arbitrarily or capriciously. *Charles Gabus Ford, Inc. v. Iowa State Highway Commission,* 224 N.W.2d 639, 644 (Iowa 1974); § 661.2, The Code. The matter would then have come to us as a de novo appeal of an equitable action.

Under present circumstances, where we have devised a remedy to suit this particular case, do we review Judge Keefe's findings for abuse of discretion, as Keystone contends? Or do we give plaintiff a de novo review of those findings, as plaintiff insists he is entitled to? In fairness, we should further tailor the procedure to meet the circumstances of this case.

We hold plaintiff is entitled to the same review he would have had except for our order providing otherwise. In other words we now review the case as though Judge Keefe's findings were made by the district court on mandamus from a decision by Keystone's board of directors.

## II. *Burden of Proof.*

Prior to the hearing, the parties agreed Keystone had the burden to prove plaintiff was not qualified as that term is used in the statute. The hearing was conducted on that premise.

In his findings Judge Keefe stated plaintiff had failed to carry the burden of proof. When this error was called to the judge's attention by motion under Iowa Civ.P. 179(b), he enlarged his findings, stating he had actually applied the correct rule as to burden of proof but had misstated the rule in his opinion. Although there is nothing to refute this and although the record bears out this is what happened, plaintiff is not satisfied. He questions the judge's assurances concerning what actually happened. We are convinced Judge Keefe did what he said he did. In any event, we have put the burden on Keystone in our de novo review.

## III. *Plaintiff's Qualifications.*

The real issue in this case had always been whether plaintiff is entitled to preference in hiring. This, in turn, depends on whether he is qualified as that term is defined in section 11, Acts of 65th G.A., ch. 1172, which has been partially set out earlier in this opinion.

The dispute between plaintiff and Keystone as to what "qualified" means was considered and—we thought—resolved in *Bishop* I. Nevertheless plaintiff continues to argue for his own interpretation of the term. We reiterate what we said in *Bishop* I:

[Mr. Bishop] believes an individual has an absolute preference who (1) is a county staff member, (2) has the requisite academic credentials, and (3) holds a proper certificate from the State Department of Public Instruction.

This view is too restrictive. Certification is of course essential and it is evidence of qualification. *Collins v. Wakonda Independent School Dist. No. 1*, 252 N.W.2d 646 (S.D.). But the record shows that AEA staff members work with various local school administrators and with local teachers who minister to children needing special help. Moreover, the area staff functions in teams. AEA boards could reasonably conclude that a certain amount of cooperation and coordination among its staff members is essential for proper functioning, and that these characteristics may be considered in determining whether an applicant is qualified. See *Hibbs v. Board of Education of Iowa Central Community College*, 392 F.Supp. 1202 (N.D.Iowa).

. . . .

Because of the necessary teamwork among AEA staff members and the continual contact with administrators and teachers of local school systems, *we conclude that boards may consider cooperation and coordination in determining whether an individual is qualified to be a staff member.*

275 N.W.2d 750–51 (Emphasis added).

No one has ever contended plaintiff is not technically qualified and possessed of all necessary mechanical and educational skills. Indeed, he is a superior hearing clinician judged by those standards. However, he lacks the ability to work with others in a cooperative way and to coordinate his program with others who must work with him. Independently of others, he excels; as a "team" member he failed miserably.

The long and acrimonious record abounds with testimony concerning this characteristic. Not all of it is unfavorable to plaintiff. He had his friends and his protagonists as well as his enemies and his adversaries. We have read all the testimony and it would serve no purpose to review it at length.

The situation, dating back to 1974, has been an impossible one. Conceding that all the blame cannot be laid at plaintiff's door, we hold he is primarily responsible for making a shambles of the special education program in the Fayette-Chickasaw school system. When placed in a position requiring cooperation with others, plaintiff became, over and over again, totally disruptive. He was resentful of authority, disdainful of his associates and his superiors, and insulting and abusive in his professional relationships. He reduced staff meetings to discord and dissidence. Some teachers stayed away entirely to avoid conflict with him; others attended but agreed with virtually any proposal simply to prevent endless conflict. At least one teacher resigned to get away from associating with him. There is a wealth of evidence that the special education program suffered because of his overall conduct.

We are convinced plaintiff was rejected by Keystone because he had made the Fayette-Chickasaw special education program almost unworkable. His prior performance in the joint county system was undeniably relevant in determining whether he was qualified to assume even greater responsibilities for Keystone.

Furthermore, in *Youel* we held lack of cooperation could amount to just cause for termination. 275 N.W.2d at 682. *cf. Van de Vate v. Boling*, 379 F.Supp. 925, 929 (D.C.Tenn.1974) (respecting schools right to not hire person who could not "harmoniously perform his or her duties"). It can also be good reason to find plaintiff not qualified for employment under the standard we outlined in *Bishop* I.

There comes a time when parties responsible for educational programs must have discretion to weed out fairly those who affect the program adversely. We said as much in *Youel*, 282 N.W.2d at 684. These unfortunate situations must be resolved without undermining a significant part of an educational program simply to vindicate one party or the other. We do not say plaintiff was totally at fault nor that others

were totally blameless. We *do* say the record discloses an irreconcilable conflict between plaintiff and others in the system which made it unlikely he could successfully perform the duties of an audiologist for Keystone. We hold plaintiff is not entitled to a writ of mandamus unless the action taken violated plaintiff's constitutional rights, a matter we now consider.

## IV. *Freedom of Speech.*

Much of plaintiff's predilection for controversy manifested itself in the form of letters to the editor or verbal criticism of the educational system and those in control of it.

Plaintiff argues these were only expressions of his constitutional right of free speech under the first amendment to the Federal Constitution. We said in *Bishop* I that plaintiff's exercise of his constitutional right to free speech could not be used as a basis for finding plaintiff unqualified. 275 N.W.2d at 752.

The guiding principles in this area come from federal cases, particularly *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) and *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The basic holding in each of these is that a public employee does not forfeit his first amendment rights by expressing his views either publicly or privately. *See Givhan,* 439 U.S. at 415, 99 S.Ct. at 696–97, 58 L.Ed.2d at 625; *Mt. Healthy,* 429 U.S. at 284, 97 S.Ct. at 574, 50 L.Ed.2d at 481. However, the right accorded by the first amendment is not absolute. It must be balanced against the demands of the school system in assuring the efficient furnishing of educational services. *Givhan,* 439 U.S. at 414, 99 S.Ct. at 696, 58 L.Ed.2d at 624; *Mt. Healthy,* 429 U.S. at 284, 97 S.Ct. at 574, 50 L.Ed.2d at 481–82.

In raising this issue plaintiff must show his conduct was within the protection of the first amendment and that it was a "substantial factor" in the decision not to hire him. It then became Keystone's burden to prove by a preponderance of the evidence that, even without such protected conduct, the result would have been the same. *Givhan,* 439 U.S. at 416, 99 S.Ct. at 697, 50 L.Ed.2d at 625; *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 484.

We recognize that *Givhan* and *Mt. Healthy* involve refusal to *renew* existing employment contracts while the present dispute concerns Keystone's refusal to *initially hire* plaintiff. Nevertheless, we find *Givhan* and *Mt. Healthy* relevant and persuasive. It is true Keystone, at the time in question, was a newly created entity; but in reality it was simply a successor to Fayette-Chickasaw. Thus, plaintiff's prior conduct while employed by Fayette-Chickasaw was a factor which Keystone was entitled to consider. This was really one of the basic holdings of *Bishop* I. We hold the standards enunciated in *Givhan* and *Mt. Healthy,* as well as those in *Youel,* are applicable not only as to this Division but as to Divisions III, V, and VI as well.

Judge Keefe specifically found that, even disregarding plaintiff's alleged protected conduct, he should still be refused employment under the *Bishop* I standards. 275 N.W.2d at 750–51. We independently reach the same conclusion for the reasons set out in Division III.

## V. *Equal Protection.*

Plaintiff says he was denied equal protection under the fourteenth amendment to the federal constitution because Keystone applied the cooperative test only to him. The record does not bear this out. It is true Keystone adopted a resolution making this a factor to be considered in employing teachers after many of the staff were already employed. However, the testimony is that cooperation was a quality that Keystone considered in all of its employment decisions. Upon this record, we cannot say that there was a violation of equal protection.

## VI. *Sufficiency of the Evidence.*

The evidentiary test in *Bishop* I required findings to be based on "objective

evidence genuinely demonstrating want of [cooperation and coordination]." 275 N.W.2d at 751. The record does this almost overwhelmingly. Even a number of plaintiff's witnesses, after attesting to his technical excellence, conceded he had severe personality problems which made him an undesirable employee. We give consideration, too, to Judge Keefe's determination that he found much of plaintiff's testimony not credible. In de novo reviews the findings of fact are entitled to weight, even though they are not binding on us. This is particularly true in considering the credibility of witness. Iowa R.App.P. 14(f)(7).

We find no basis for granting plaintiff the relief he seeks. He was not entitled to preference in employment under section 11, Acts 65th G.A., chapter 1172. The finding of Judge Keefe sitting as the Keystone board of directors is affirmed.

AFFIRMED.