**In the MATTER OF PROPERTY SEIZED FROM Bobby Gene SYKES and Taras Tyler, Bobby Gene Sykes and Taras Tyler, Appellants.**

No. 91–1461.

Supreme Court of Iowa.

March 24, 1993.

John W. Ackerman of Ackerman Law Office, Des Moines, for appellants.

Bonnie J. Campbell, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., Thomas J. Ferguson, County Atty., and Thomas Bower, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

CARTER, Justice.

Appellants, Bobby Gene Sykes and Taras Tyler, appeal from an order forfeiting their interest in a 1984 Corvette automobile as a result of the district court's finding that the vehicle had been used in the commission of a criminal offense. The court predicated the forfeiture on Iowa Code section 809.10(3) (1985).[1]

Appellants urge that the order of forfeiture was entered contrary to law. In brief, it is their contention that prior to the order forfeiting the automobile the State had eliminated that item from the list of property sought to be forfeited. They contend that the forfeiture proceeding had been finally concluded as to the remaining items sought to be forfeited. That circumstance, appellants argue, should serve as a bar to the State's effort to reinitiate forfeiture proceedings as to the automobile. After sifting through the rather confusing series of events that preceded the order of forfeiture, we conclude that the district court's order was not contrary to law. Consequently, we affirm the order of forfeiture.

On June 4, 1987, Waterloo police officers obtained a warrant to search the apartment and two unattached garages of appellants Sykes and Tyler. The items described in the warrant included paraphernalia used in the manufacture, use, and sale of marijuana; records of drug transactions; and proceeds of drug sales. Upon arrival of the officers for purposes of executing this warrant, Sykes and Tyler were seen leaving the apartment complex in the 1984 Corvette automobile, which is the subject of this dispute. The police gave chase and eventually were able to stop the vehicle and arrest Sykes and Tyler. During their pursuit of the vehicle, the officers witnessed seven small plastic bags being thrown from the vehicle. These items were recovered, and it was later established that they contained marijuana. After stopping the Corvette and arresting the occupants, the vehicle was seized and an additional bag of marijuana subsequently found inside.

On June 22, 1987, Sykes and Tyler filed an application in the Iowa District Court seeking return of the 1984 Corvette, two sets of keys to the car, two batches of money, and eight additional items of personal property taken from them at the time of their arrest. Item 3 on the schedule attached to this application was described as $445 in currency, cash, and change. Item 13 on this list was described as $38 in currency.

A hearing on appellants' application for return of property was scheduled for July 17, 1987, at 1:30 p.m. At 9:53 a.m. on that day the State filed a notice of forfeiture, describing the same thirteen items sought by appellants. On the face of this notice of

---

1. In addition to finding that the forfeited automobile had been used in the commission of a criminal offense (bringing it within the definition of Iowa Code § 809.1(2)(b)), the court also found that it had been acquired with the proceeds of a criminal offense (bringing it within the definition of § 809.1(2)(c)).

forfeiture was a return of service that recited "copies given/mailed by certified mail to person(s) from whom property seized on the 4th day of June 1987." This return of service was subscribed "Tom Ferguson, prosecuting county attorney." A second return of service was stapled to the notice of forfeiture, which recited that the notice had been personally served on appellants on July 17, 1987, by a Waterloo police officer.

At the hearing that took place on the afternoon of July 17, the district court made no mention of the State's notice of forfeiture filed that morning. Comments made by the court indicate that it was unaware of the existence of that document. The court focused its attention entirely on appellants' application for return of seized property. It came to light at this hearing that the 1984 Corvette seized from appellants on June 4, 1987, had already been the subject of a successful forfeiture by the State in a proceeding initiated in September 1985. That order was the subject of a pending appeal.

Following this afternoon hearing, the court entered the following order:

The court will take judicial notice of cause no. 1009 from Black Hawk County. An Order has been entered in that particular case forfeiting one certain red Chevrolet Corvette and the keys to the red Corvette. Accordingly, the court concludes that the request for the return of those items is moot.

The court has further been advised that the state intends to file a forfeiture motion for items 3 and 13 [consisting of cash]. That motion will be set for hearing.

The court then ordered that all items on the list of requested property other than the Corvette, the two cash items, and two sets of car keys be returned to appellants.

The application filed by appellants on June 22, 1987, was for the return of seized property pursuant to Iowa Code section 809.3. When the State filed its notice of forfeiture on July 17, 1987, it then became incumbent on appellants to file a claim for return of forfeitable property pursuant to Iowa Code section 809.9 in order to prevent a forfeiture by default. The July 17 notice of forfeiture remained on file for the following ten months with no action being taken by appellants, the State, or the court. On May 18, 1988, the State filed a new notice of forfeiture describing only the $483 in cash, which had comprised items 3 and 13 of its earlier forfeiture notice.

On May 31, 1988, the clerk of the Iowa District Court entered an order of forfeiture by default as authorized by Iowa Code section 809.10 (1987). That order purported to vest title in the State of Iowa as to all items listed in "the Notice of Forfeiture [that] was served on June 4, 1987."

On February 22, 1990, the Iowa Court of Appeals filed a decision that reversed the forfeiture of appellants' Corvette to the State in the September 1985 forfeiture proceeding. When the procedendo issued on that decision, appellants sought return of the automobile. At this time, the State asserted that the 1984 Corvette had been forfeited to the State a second time by the clerk's default order of May 31, 1988. In seeking to advance this position, the State obtained an ex parte order on May 11, 1990, which amended the clerk's default order so as to clearly identify the notice of forfeiture to which that order related. This ex parte order specified that the clerk's default order of May 31, 1988, related to the notice of forfeiture filed on July 17, 1987, and personally served on appellants on that date.

Appellants challenge the issuance of this ex parte order and brought a mandamus proceeding seeking return of the automobile. Following a hearing held before Senior Judge C.W. Antes, the court ruled that (1) the State could simultaneously pursue a second attempt to forfeit the automobile while an appeal was pending concerning the earlier forfeiture; (2) the July 17, 1987 hearing and order had not considered the notice of forfeiture filed that morning; (3) appellants were entitled to a hearing concerning the interpretation of the clerk's May 31, 1988 order; and (4) if action taken by the State or the court at the July 17, 1987 hearing had caused appellants to be-

lieve that the notice of forfeiture as to the automobile had been abandoned, they were entitled to a belated hearing at which they could factually resist the State's attempt to forfeit the automobile.

Soon after Judge Antes' order, another hearing was held on the issues in this case before Judge William G. Klotzbach. Evidence was presented concerning the parties' interpretation of preceding events and, in addition, the State presented evidence for purposes of establishing that it did have grounds to forfeit appellants' automobile.

In ruling on these matters, Judge Klotzbach assumed that certain events had caused plaintiffs to believe, to their detriment, that the State was no longer seeking forfeiture of the 1984 Corvette automobile following the July 17, 1987 hearing. The court concluded, however, that any prejudice could be cured by granting appellants a belated hearing on the State's efforts to forfeit the automobile. Viewing the most recent hearing in that light, the court found that the State's evidence was sufficient to sustain a forfeiture of the car.[2]

■ Appellants do not challenge the sufficiency of the evidence to show legal grounds for forfeiture. Their appeal rests on their claim that any attempt to forfeit the 1984 Corvette had been abandoned by the State and the forfeiture proceeding terminated with an order forfeiting only the cash. They urge that any attempt to reinitiate the forfeiture of the automobile after the May 31, 1988 order of the clerk was barred by the statute of limitations contained in Iowa Code section 809.8(2).

In our review of the record, we find much to indicate that, between the July 17, 1987 hearing on return of property and the May 31, 1988 forfeiture order entered by the clerk, the State intended to forego any effort to forfeit the 1984 Corvette a second time pursuant to the July 17 notice. It is

significant in this regard that, under section 809.9(1), forfeiture of those items listed in a notice of forfeiture, duly served, is automatic if the owners fail to file a claim for return within thirty days. In spite of the legal consequences of appellants' inaction, the State sought no formal order from the court as to the automobile or the cash for more than ten months. Even more puzzling is the position taken by the State concerning the cash. If the July 17 notice of forfeiture was viewed as a viable and continuing legal instrument, then the cash was automatically forfeited on August 18, 1987. The fact that the State filed a new notice of forfeiture concerning the cash on May 18, 1988, strongly suggests that it no longer intended to accord the July 17 notice any legal efficacy.

Unfortunately for appellants, their rights may not hinge on the State's uncommunicated intentions. The issue is whether the State was entitled to change its position and take advantage of the clerk's default order on the notice of forfeiture that listed the 1984 Corvette. The July 17, 1987 notice of forfeiture, after being served on appellants and filed with the court, triggered legal consequences. Those consequences could only be altered by formal action in the judicial proceedings or some action by the State that would vest appellants with a legal right to have formal action taken abating the consequences of the notice of forfeiture. We find no indication in the present case that either of these circumstances exist.

■ Although not articulated as such by appellants, the substance of their arguments touches on doctrines of waiver and estoppel. "Waiver," which is the intentional relinquishment of a known right, rests on intention while "estoppel" rests on misleading conduct. *Bishop v. Keystone Area Educ. Agency,* 275 N.W.2d 744, 753 (Iowa 1979). Clearly, appellants have shown no formal waiver by the State of its right to

---

**2.** The court found that the evidence previously recited concerning the chase and apprehension of appellants' automobile on June 4, 1987, established that the automobile was then being used in the pursuit of criminal activity. In addition, the court found that evidence presented by the

State concerning appellants' purchase of the automobile with a large sum of cash in small denominations coupled with an absence of legitimate sources of income on appellants' behalf was sufficient to prove that the automobile was acquired with the proceeds of illegal activities.

stand on the July 17, 1987 notice of forfeiture. With respect to any implied waiver of its right to pursue the July 17 notice, this would have to occur by some clear, unequivocal, and decisive act. 28 Am. Jur.2d *Estoppel and Waiver* § 160 (1966). Such act must be inconsistent with any other intention than waiver of the right at issue. *Id.* at 846. Mere passivity may not support a waiver. *Id.*

The *Bishop* case recognizes that an election not to pursue a claim in a legal proceeding may give rise to an implied waiver of that claim. *Bishop*, 275 N.W.2d at 753. Here, however, there was no time limit within which the State was required to make that election prior to the clerk's order of default. However clear the State's intention, for a period of time, not to rely on the July 17 notice, there was no act of waiver on its part either express or implied that would preclude it from changing its position in this regard.

The formal order of forfeiture entered on May 31, 1988, if applicable to the July 17 notice of forfeiture, amounted to a judgment in the case that rejected appellants' theretofore unasserted claim of waiver. Although we agree with appellants that the ex parte order purporting to interpret the May 31 order should be viewed as a nullity, we have no problem in interpreting the May 31 forfeiture as applicable to the July 17 notice of forfeiture. The language of the clerk's default order incorporates a prominent date on the face of the July 17 notice. In contrast, the clerk's order in no way describes the May 18, 1988 notice of forfeiture. The latter notice of forfeiture had not been on file long enough to have been the subject of a default order on May 31.

With respect to any claim of estoppel, we agree with the two district court judges that the only relief appellants should have been granted on an estoppel theory, based on misleading conduct, was a right to a belated hearing to challenge the forfeiture. They were granted such a hearing and do

not challenge the result thereof on the merits.[3] For these reasons, we conclude that no basis has been shown for disturbing the judgment of the district court.

**AFFIRMED.**

---

3. Appellants do argue on this appeal that the district court abused its discretion in denying its motion to continue the hearing that took place before Judge Klotzbach. We find no abuse of discretion in this regard. Moreover, it appears that the court kept the record open and afforded appellants an opportunity to offer additional evidence at a later time.