## AR–WE–VA COMMUNITY SCHOOL DISTRICT, Appellant-Resister,

### v.

## Elizabeth LONG, Appellee-Applicant.

## AR–WE–VA COMMUNITY SCHOOL DISTRICT, Appellant-Resister,

### v.

## Leah HENKENIUS, Appellee-Applicant.

### Nos. 62826, 62827.

Supreme Court of Iowa.

May 21, 1980.

James L. Sayre of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for appellees-applicants.

Ronald H. Schectman of Schectman & Eich, Carroll, and Edgar H. Bittle of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellant-resister.

Considered by REYNOLDSON, C. J., and REES, UHLENHOPP, McCORMICK and McGIVERIN, JJ.

REES, Justice.

Teachers Elizabeth Long and Leah Henkenius petitioned this court for further review of a court of appeals decision reversing the reinstatement of their teaching contracts. We granted their petitions and now find merit in at least one of their contentions. We are therefore compelled to vacate the opinion of the court of appeals and affirm the district court judgment reinstating the applicants.

On March 14, 1978, the superintendent of the Ar-We-Va Community School District served a written notice of recommendation of termination upon the applicants pursuant to section 279.15(1), The Code 1977, citing declining enrollment and an accompanying decline in the financial assets of the district as reasons necessitating staff reduction. As required by section 279.16, The Code, the district board of directors met in executive session regarding the terminations and issued their findings of fact and conclusions of law. They found that staff reduction through termination was necessary for two positions in the elementary grades (kindergarten through sixth), that staff reduction through attrition would not provide an alternative to the terminations, and that the relative skill, ability, competence and qualifications of Long and Henkenius were less than the other teachers in the elementary system. The board then concluded that sufficient cause existed for termination of the teachers' contracts.

The applicants, as nonprobationary teachers, appealed the decision of the board to an adjudicator as allowed by section 279.17. Following an evaluation of the entire record, the adjudicator concluded that the terminations were in violation of the master contract between the board and the local education association in that the evaluation procedure followed by the superintendent's designee, the elementary principal, did not comport with the evaluation provisions of the master contract and that the terminations violated the staff reduction provision of the master contract[1] as it applies to seniority. He therefore reversed the board decision and reinstated the teachers for the fiscal year 1978–79.

The board then rejected the arbitrator's decision, as was its statutory prerogative under section 279.18, and appealed the decision to the Crawford County district court. On November 10, 1978, the district court entered judgment and decree affirming the decision of the adjudicator on different grounds. It concluded that the record did not show that the staff reduction could not be accomplished by attrition as required by the relevant provision of the master contract, and that two positions in the elementary grades had been eliminated through attrition. Finding the board decision thus unsupported by a preponderance of the evidence, the court reinstated the contracts of the teachers for the 1978–79 fiscal year.

On further appeal the court of appeals reversed, finding, after consideration of the grounds on which the adjudicator and the district court relied, no infirmities in the termination procedure followed by the school district. Long and Henkenius petitioned this court for further review of the decision of the court of appeals. On March 3 of this year we granted their petition.

They present the following issues for our review:

(1) Did the court of appeals rely on factual determinations that are without support in the record?

(2) Did the court of appeals err in concluding that the master agreement between the school district and the education association did not require that the applicants be evaluated in comparison to teachers at all grade levels at which they were certified to teach before termination of their contracts?

(3) At the time this appeal was initially submitted, should it have been retained by

---

1. B. *Reduction in Staff Procedures*

When, in sole, exclusive and final judgment of the Board of Education, decline in enrollment, reduction or program or any other reason requires reduction in staff among teachers, the Administration shall attempt to accomplish same by attrition. Attrition is defined to mean death, retirement or teachers leaving the system. In the event necessary reduction in staff cannot be adequately accomplished by attrition given the necessity to hire and/or maintain the most competent and qualified staff available in the interest of perpetuating the highest quality education program possible, the Administration shall base its decision as to resulting contract renewals on the relative skill, ability, competence and qualifications of available teachers to do the available work. If a choice must be made between two or more teachers of equal skill, ability, competence and qualifications to do the available work, contract renewals will be given to the teacher(s) with the greater full-time continuous length of service in the district (system seniority).

this court because it involved substantial issues of first impression?

Because we find it dispositive of the merits of this appeal, we find it necessary to address only the second of the aforementioned issues.

I. The court of appeals concluded that the board did not violate the master agreement in evaluating only the teachers in grades kindergarten through six before making any staff reduction decisions despite the fact that both Long and Henkenius were certified to teach grades seven through nine in addition to the elementary grades. In so doing they cited our decision in *Bishop v. Keystone Area Education Agency Number One*, 275 N.W.2d 744, 750 (Iowa 1979), for the proposition that certification is only evidence of qualification. The applicants contend that *Bishop* is distinguishable and that this court's decision in *Hagarty v. Dysart-Geneseo Community School District*, 282 N.W.2d 92 (Iowa 1979) dictates a different result. We find merit in the applicants' position, vacate the judgment of the court of appeals and affirm the judgment of the district court.

The master contract requires that consideration be given to the qualifications, among other factors, of the available teachers in making staff reductions. When interpreting a similar master contract in *Hagarty*, 282 N.W.2d at 97, we reached the following conclusions:

> The language in the staff reduction policy which is in controversy was placed there at the request of teachers. As did the trial court, we believe the purpose was for the teachers to obtain liberal recall rights. Moreover, we believe the parties desired an objective standard rather than one which would ·depend upon the subjective views of either the board or individual teacher. In light of these purposes, we conclude the word "qualified" as used in the recall policy means that the teacher must have whatever authority is necessary to be assigned to teach in the position which is offered. Here the only requirement imposed either by the state or board was certification

and the general endorsement for teaching in the elementary grades. Because she was so certified and endorsed, plaintiff was qualified for the position within the meaning of the policy.

A different standard for determining employment qualifications had been established by the school board in *Bishop v. Keystone Area Education Agency Number 1*, 275 N.W.2d 744 (Iowa 1979), and interpretation of the word "qualified" in that case is distinguishable on that basis. As we noted in *Hagarty, Bishop* involved a question of statutory construction regarding job preferences for teachers who had been displaced by school reorganizations. In contrast to the contract provision at bar, that statute involved use of the term "qualified" in a general sense, requiring that preference be given to "qualified personnel who seek employment", 275 N.W.2d at 750. Additionally, the master contract context of the terminology requires application of a different interpretational perspective. These considerations distinguish *Bishop* from *Hagarty*, and lead us to find the *Hagarty* interpretation more appropriate to the case at bar and to require a result different from that reached by the court of appeals.

In *Bishop* we were asked to equate "qualified" with possession of state certification in the context of giving job preferences to educators displaced by school district reorganizations. The word was not used in conjunction with any other terminology. We declined to do so, ruling certification was evidence of qualification, 275 N.W.2d at 750, but that the term also involved other characteristics such as cooperation. Here, in contrast, qualification is apparently used in a more specific sense as one of several factors for board consideration: "the Administration shall base its decision as to resulting contract renewals on the relative skill, ability, competence and qualifications of available teachers to do the available work." Qualification in this latter setting is thus exclusive of skill, ability and competence, considerations which were arguably incorporated in the meaning of "qualified" in *Bishop*.

Like that involved in *Hagarty*, this provision is contained in a master contract, is the result of collective bargaining and is meant to ensure certain procedural rights for teachers if and when declining enrollment requires the elimination of teaching positions. We further conclude, as we did in *Hagarty*, that the parties desired to establish an objective standard to guide the board in reaching termination decisions. Certification, as the statutorily prescribed minimum qualification[2], provides such a standard. Before a teacher's contract is terminated pursuant to the master contract, he/she must be evaluated in relation to all teachers in positions which those under consideration are certified to teach. Thus Long and Henkenius should have been compared to all teachers in grades kindergarten through nine for the school board to have complied with the terms of the master contract. This result is consistent with what we perceive to be the purpose of the evaluation process: to retain the most competent of the available teachers to do the available work.

The school district points to several practical difficulties which compliance to this standard would entail. These involve the differing functions of teachers in elementary grades, junior high and senior high school (ninth grade is the first year of high school in the Ar-We-Va school system) and the resulting problems in conducting meaningful comparisons of teaching ability. They further contend that these comparative evaluations should be limited to the smallest number of teachers due to the stressful nature of such procedures and that limiting the evaluations to the elementary grades furthers this goal. While we are sympathetic to the practical difficulties accompanying interdivisional comparisons, we conclude that the parties wished to establish objective standards for evaluation, to the extent possible, rather than rely solely on the board's subjective judgment. We further note that the contract makes no reference to elementary or junior high

school as separate evaluative categories, as could have been done, but refers generally to "available teachers for available work". As to the latter of the aforementioned concerns, it is precisely the manner of determining who should be evaluated which is before us. Had the parties wanted to limit the evaluations, they were certainly at liberty to do so.

We hold that the school district violated the relevant provision of the master contract in not evaluating teachers Long and Henkenius in relation to. those other teachers whose positions Long and Henkenius were certified to fill, and that the court of appeals erred in relying on *Bishop* rather than our decision in *Hagarty* in concluding otherwise. Although basing our holding on a different ground from that of the trial court, we conclude that the contracts of the applicants were not validly terminated and that the teachers must be reinstated. The opinion of the court of appeals is therefore vacated, and the judgment of the trial court affirmed.

OPINION OF COURT OF APPEALS VACATED, JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur, except UHLEN-HOPP, J., who dissents.

UHLENHOPP, Justice (dissenting).

I agree with the opinion of the Court of Appeals. The introductory clause of the sentence in question states:

In the event necessary reduction in staff cannot be adequately accomplished by attrition given the necessity to hire and/or maintain *the most competent and qualified* staff available in the interest of perpetuating the highest quality education program possible, . . .

The sentence then proceeds to say

the Administration shall base its decision as to resulting renewals on the *relative* skill, ability, competence and qualifica-

---

2. Section 294.1, The Code, states in relevant part: "*Qualifications*—compensation prohibited. No person shall be employed as a teacher in a common school without having a certificate issued by some officer duly authorized by law." (Emphasis added).

tions of available teachers to do the available work.

(Emphasis added in both quotations.)

In using the word "qualified" in the introductory clause and the words "relative . . . qualifications" in the main part of the sentence, I think the contracting parties were talking about teachers' qualifications in a broad sense, not in the narrow sense of whether teachers are certified. Especially is this true in view of the other three words in the group: "skill," "ability," and "competence." "Noscitur A Sociis," Black's Law Dictionary 1209 (Rev. 4th ed. 1968); 66 C.J.S. *Noscitur A Sociis*, 607–08 (1950).

I would affirm the decision of the Court of Appeals.