Karlyne VON KROG, Plaintiff–Appellee,

v.

BOARD OF EDUCATION OF the BEA-
MAN–CONRAD–LISCOMB COMMUNI-
TY SCHOOL DISTRICT and Beaman-
Conrad–Liscomb Community School Dis-
trict, Defendants–Appellants.

No. 2–64108.

Court of Appeals of Iowa.

Aug. 26, 1980.

Michael J. Moon of Cartwright, Druker & Ryden, Marshalltown, for defendants–appellants.

James L. Sayre of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for plaintiff–appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

CARTER, Judge.

Appellants Board of Education and District appeal from orders of district court reversing Board's decision to terminate appellee's teaching contract. We reverse and remand with directions to reinstate the decision of the Board.

I. Appellee was a physical education teacher for the District since August, 1969. She was therefore no longer a probationary teacher as defined in section 279.19, The Code. On or about February 13, 1978, she was notified by the superintendent of schools that her contract was being considered for termination because of contemplated staff reduction. One week later, on February 20, the Board decided to reduce the high school physical education staff. On March 8, 1978, appellee was formally notified by the superintendent that he would recommend to the Board that her contract be terminated at the end of the 1977–78 school year. The reasons for this recommendation were listed in the notice:

> The recommendation to terminate your contract is being made for the reasons that: the number of full time physical education positions within the District is being reduced from the current two (2) positions to one (1) position, effective for the school year, 1978–79. You have been selected for lay off following a review of the qualification of employees in the affected area and in compliance with Article XII of the current collective bargaining agreement.

Section One of Article XII of the agreement reads as follows:

> When the School District determines that staff reduction is required, it shall attempt to accomplish the necessary reduction through attrition. In instances where the reduction cannot be accomplished by attrition, the School District will determine the area(s) to be affected and shall then examine the qualifications of employees within that area. The School District shall determine the least qualified employee within the area and that employee shall be reduced first. In the event of employees with relatively equal qualifications, the employee with the least experience in the affected area shall be reduced.

Upon receipt of the notice, appellee requested a private hearing with the Board which was held on March 23–24, 1978. The Board concluded on July 30, 1978 that just cause existed to terminate her contract. Pursuant to section 279.17, The Code, she appealed that decision to an adjudicator who reversed the Board's decision and held that no just cause existed to terminate the contract. The Board rejected that decision and appealed to the district court (§ 279.18, The Code) which affirmed. The Board is now appealing from the district court's decision.

II. Sections 279.17 and 279.18, The Code, provide a rather intricate system for reviewing decisions in cases involving termination of teachers' contracts. According to section 279.17, a teacher may appeal a board decision to an adjudicator who shall then:

> ... reverse, modify or grant any appropriate relief from the board action if substantial rights of the teacher have been prejudiced because the board action is: 1. In violation of a board rule or policy or contract; or 2. Unsupported by a preponderance of the competent evidence in the record made before the board when that record is viewed as a whole; or 3. Unreasonable, arbitrary or capricious or

characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

Further appeal is provided in section 279.-18 which allows either party to reject the adjudicator's decision and seek review in the district court. That court may grant appropriate relief if petitioner's rights have been harmed because the decision of the board or adjudicator is:

1. In violation of constitutional or statutory provisions; or 2. In excess of the statutory authority of the board or the adjudicator; or 3. In violation of a board rule or policy or contract; or 4. Made upon lawful procedure; or 5. Affected by other error of law; or 6. Unsupported by a preponderance of the competent evidence in the record made before the board and the adjudicator when that record is viewed as a whole; or 7. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

In this case the district court affirmed the adjudicator's decision by finding the Board's action unsupported by a preponderance of the competent evidence and contrary to provisions of the master contract.

The scope of our review of the district court's decision is governed by *Board of Education of Fort Madison Community School District v. Youel,* 282 N.W.2d 677, 680 (Iowa 1979) where it was held that an appeal under section 279.18 is at law for the correction of errors under the seven standards set forth above. The *Youel* court explained further: "Under the statutory scheme, the Board alone makes findings of fact, and it is those findings which must be supported by a preponderance of the competent evidence when the record is viewed as a whole." 282 N.W.2d at 682. We therefore examine the record made before the Board and adjudicator to determine whether the Board's action is supported by the requisite preponderance.

III. Section 279.15(2), The Code, sets forth the rules relating to the notice of recommendation of termination of a teacher's contract. It is specifically provided that the notice "shall contain a short and plain statement of the reasons, which shall be for just cause, why the recommendation is being made." The notice which was sent to appellee gave as the main reason for the recommendation the fact that the physical education staff was being reduced. The record indicates budgetary problems and declining enrollment as the major reasons for the staff reduction. These very reasons have been held to be "just cause" for termination of both teachers' and administrators' contracts. *Briggs v. Board of Directors of Hinton Community School District,* 282 N.W.2d 740, 742 (Iowa 1979).

■ The issue here is whether the preponderance of the competent evidence in the record supports the Board's decision. We think it does. Regarding budgetary considerations, Gene Fokken, a former superintendent of appellant School District, testified at the Board's hearing that the district has been on a very "tight budget situation" and needs to borrow large sums of money. He stated "we have carried forward bills that we could not pay in the month of June, for example, we postponed those current bills to the next fiscal period; and I assume that the district is still operating on that kind of a basis to a degree." Ray Messerole, the present superintendent, affirmed Fokken's testimony, adding "We find that we have no allowance for error or misfortune in our budget." Appellee attempts to counter these assertions by focusing on the fact that the District would receive $60,000 of new money for the 1978–79 budget and that only $50,000 of that is needed for salary increases, leaving $10,000 for other purposes. Appellee therefore concludes that budgetary considerations cannot have been a reason for the staff reduction. We disagree. First, Messerole testified the $10,000 would be needed for numerous other expenses including transportation, capital outlay, heat, lights, gas and liability insurance. In addition, appellee ignores the testimony described above relating to the necessity to carry over unpaid bills to the succeeding fiscal year.

The Board also found that staff reduction was justified because two full–time physical education teachers were not needed. One reason for this is declining enrollment. Fokken testified that enrollment in the Beaman–Conrad–Liscomb School District decreased by about fifty students from September, 1973 to September, 1974, to a total of 620. In September, 1977, enrollment stood at 585 with projected declines to 540 for the 1980–81 school year. In addition, Messerole testified that the primary reason for staff reduction is that both physical education teachers were not being used fully at that time. Gerald Gade, principal for grades five through eight, testified that appellee's presence in each and every one of her class periods was not essential. He further stated that the District does not need two full–time physical education teachers; in terms of full teacher equivalency, the District needs 1.6 or 1.7 teachers, and that the District was then offering physical education classes in excess of state minimum requirements. To handle the classes currently taught by appellee, Messerole testified that there were proposals to assign those classes to Marvin Boehme (the other physical education teacher) and Paul Eckerman (elementary administrative assistant who had taught physical education for six years at another school). In that way, all of these classes could be taught while requiring only one full–time teacher instead of two.

Both the adjudicator and the district court, in reversing the Board's decision, relied in large part on the fact that there was no planned reduction in the number of physical education classes. This was apparently thought to indicate no reduction in teaching positions was required. But both Messerole and Gade testified to the lack of need for two full–time teachers under the existing class schedule. There was evidence from which the Board could reasonably conclude, as it did, that the same number of classes could be taught by one full–time teacher (Boehme) with help from other presently–employed teachers.

As stated in *Hagarty v. Dysart–Geneseo Community School District*, 282 N.W.2d 92, 98 (Iowa 1979), "we could not countenance a subterfuge by which an unscrupulous school board would use a fictitious necessity for staff reduction as a pretext for discharging a teacher." However, we find no subterfuge here. The Board concluded that appellee's contract termination was justified due to a need for staff reduction resulting from budgetary problems, declining enrollment and lack of need for two full–time physical education teaching positions. These conclusions are supported by the preponderance of the competent evidence in the record made before the Board and the adjudicator when that record is viewed as a whole. It follows the Board's decision was not unreasonable, arbitrary, capricious or an abuse of discretion. The district court erred in finding a lack of just cause for termination of appellee's contract.

■ IV. The Board argues the district court erred in finding that termination of appellee's contract violated the staff reduction provision of the collective bargaining agreement between the District and the teachers' association. We agree.

Section one of the staff reduction provision requires the District to attempt to accomplish any necessary staff reduction first by attrition. The district court found no showing that the Board tried to use attrition. We cannot accept the conclusion that attrition would have solved the problem which faced the District. The Board decided to reduce the physical education staff on February 20, 1978. At that time there were no other vacancies to be filled. Two other teachers submitted their resignations on March 1 and March 15 respectively, but they taught social studies and second grade. Since appellee was certified to teach only physical education, she could fill neither of those vacancies. Under these circumstances, it could not reasonably have been expected that staff reduction could be accomplished by attrition.

In so finding, we reject appellee's claims as to the meaning of "attrition" as used in the master contract. She urges that because both people with whom she was com-

pared in determining the least qualified instructor (Boehme and Eckerman) were certified to teach in the areas created by the March, 1978 resignations, they should have been shifted to those positions so that appellee could retain her position. Nothing in the collective bargaining agreement requires the District or Board to do such a shuffling of positions. In fact, the agreement indicates the contrary. The section on recall rights provides: "A teacher who is terminated for reasons of staff reduction shall have recall rights for any position which becomes available *and for which he or she is qualified as determined by the School District*" (emphasis added). Here, the positions which become available were in social studies and second grade, neither of which appellee was certified to teach. The section on recall rights does not place an affirmative duty on the Board to perform a wholesale rearrangement of teaching assignments every time a vacancy occurs. Only if a vacancy occurs in a position for which appellee is qualified to teach are the recall provisions applicable.

The recent case of *Ar- We Va Community School District v. Long*, 292 N.W.2d 402 (Iowa 1980), does not compel a different result. There, the District terminated two elementary teaching positions after finding attrition unavailable. Both teachers were certified to teach kindergarten through ninth grades, but in making the staff reduction decisions, the board evaluated only those teachers in kindergarten through sixth grades. The court held the two teachers should have been compared to all teachers in positions for which the two were certified. That requirement was followed in this case. Appellee was compared with Boehme and Eckerman and was determined (in the method described below) to be the least qualified and therefore subject to contract termination. We find no error in this procedure.

While appellee argues that the method used by the Board to determine the least qualified employee violated the terms of the collective bargaining agreement, we are unable to determine that it did. We have already determined the Board did not violate the agreement in not using attrition as the first method of staff reduction since that method was unavailable here. The agreement further provides the District shall determine the area to be affected by staff reduction (this was done on February 20, 1978 when the Board determined reduction shall occur on the physical education staff) and then examine the qualifications of the teachers within that area. For this purpose the Board relied on the results of a survey of the teachers conducted by the school superintendent. This survey was conducted pursuant to a staff reduction policy adopted by the Board in 1975. Under that policy, points are assigned to each teacher based on their total years of teaching experience in all areas and their training. Experience and training are equally weighted. These points are then totalled, with the Board deeming those with a greater number of points to be more "qualified." Under this system, for the 1977–78 school year, Eckerman had 35 points, Boehme had 25 and appellee had 13.5. Because appellee had the least number of points, the Board determined her to be "the least qualified employee" within the area to be reduced and consequently terminated her contract.

We further find that there was an adequate factual basis for the calculations employed in this rating system. Fokken testified as follows:

> The hours counted (for experience and training) were those that were presented to the school district and used for placement on salary schedules. Therefore, we assumed that those hours are basically beyond question. We also assume that the experience outside the district is accurate as presented to employees when they present themselves for employment in our district.

Experience and training are easily quantifiable and objective factors which do not depend on the subjective views of members of the Board, the District or the teacher. We conclude that the assumptions upon which this policy is based are warranted. *See Hagarty*, 282 N.W.2d at 97; *Bishop v.*

*Keystone Area Education Agency Number One*, 275 N.W.2d 744, 750 (Iowa 1979) ("An objectively reasonable educational basis must exist for its determination that a given individual is or is not qualified.")

■ Appellee also claims the policy and the bargaining agreement are inconsistent in that the former relies on experience and training whereas the latter refers only to experience ("In the event of employees with relatively equal qualifications, the employee with the least experience in the affected area shall be reduced.") She urges that the agreement must control. We think the two provisions can be easily harmonized. The agreement does not define "qualifications" or in any way limit how the District may establish criteria for "qualifications." In *Bishop*, the court said that area education agency boards could reasonably conclude that qualifications included some degree of cooperation and coordination. This indicates that a school board has at least some discretion to determine what criteria to use to determine qualifications for staff reduction purposes. In this case the Board chose to define "qualifications" primarily in terms of experience and training. We cannot say the Board abused its discretion in doing so. Contrast *Ar–We–Va*, 292 N.W.2d at 404, where the court found a narrower definition of "qualifications" when that term was used together with "skill," "ability," and "competence" ("Qualification in this latter setting is thus exclusive of skill, ability and competence").

■ V. Appellee's last claim is that her constitutional right to due process was violated by the Board's decision. According to *Brouillette v. Board of Directors of Merged Area IX, etc.*, 519 F.2d 126, 128 (8th Cir. 1975), the following procedural due process requirements must be met before an Iowa teacher's contract may be terminated:

> ... (1) clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them; (2) notice of both the name of those who have made allegations against the teacher and the specific nature and factual basis for the charges;

(3) a reasonable time and opportunity to present testimony in his or her own defense; and (4) a hearing before an impartial board or tribunal.

Appellee's specific claim is that the Board was not an impartial tribunal since it decided on February 20, 1978 to reduce the physical education staff after she had already received notice from the superintendent on February 13 that her contract was being considered for termination. At that point, she claims, the Board's decision was predetermined.

We disagree. It was not until March 8 that the superintendent gave formal notice to appellee that he would recommend to the Board her contract be terminated. It was the superintendent, not the Board, who notified her that her contract was being considered for termination on February 13. Appellee cites *Keith v. Community School District of Wilton, etc.*, 262 N.W.2d 249 (Iowa 1978), to support her claim of the Board's partiality here. In *Keith*, however, it was the board itself that initiated the termination proceedings. Thus, the board there in effect was "acting as prosecutor, judge and jury." 262 N.W.2d at 261. In this case, pursuant to section 279.15, The Code, the superintendent initiated the process by giving appellee the required notice and the Board held its hearing under section 279.16. The *Keith* court said: "The critical determination here in assessing the charge of partiality of the decisionmaker is *whether in weighing the evidence he is required to call on his own personal knowledge and impression of what occurred.*" Quoting *Wilson v. Lincoln Redevelopment Corporation*, 488 F.2d 339, 342–43 (8th Cir. 1973) (emphasis supplied by Iowa Supreme Court). Here the Board conducted the hearing pursuant to statute and heard eight different witnesses. There is absolutely no indication in the record that any of the Board members voted on the basis of their own knowledge or impressions as to what occurred. Appellee was not denied an impartial hearing; her due process rights were not violated.

VI. The Board's decision to terminate appellee's contract was supported by a preponderance of the evidence in the record when viewed as a whole. Her termination was not in violation of any board rule, policy or contract. It was error for the adjudicator and the district court to rule otherwise. We therefore reverse those rulings and remand to the district court with directions to reinstate the Board's decision to terminate appellee's contract.

REVERSED AND REMANDED.