John FAY, Plaintiff-Appellant,

v.

The BOARD OF DIRECTORS OF the NORTH-LINN COMMUNITY SCHOOL DISTRICT, Defendant-Appellee.

No. 2-64155.

Court of Appeals of Iowa.

Aug. 26, 1980.

James L. Sayre of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for plaintiff–appellant.

Scott E. McLeod of Lynch, Dallas, Smith & Harman, Cedar Rapids, Iowa, for defendant–appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

PER CURIAM.

Petitioner, John Fay, appeals from district court order reversing the adjudicator's decision and reinstating appellee Board's decision to terminate his teaching contract. He argues 1) that the Board's decision was not supported by a preponderance of the evidence, 2) that district court erroneously used a substantial evidence standard rather than a preponderance standard in finding just cause to terminate the contract, 3) that district court should have given more weight to the adjudicator's decision, and 4), that the Board's fact findings failed to comply with statutory requirements. We affirm.

Petitioner was a sixth grade teacher employed by the North Linn Community School District. On March 14, 1979, Superintendent Timmons notified him in writing that Timmons would recommend to the Board that petitioner's teaching contract be terminated. This notice and recommendation given pursuant to section 279.15, The Code 1979, listed the following reasons for the superintendent's action:

(1) Unacceptable rapport with students.

(2) Unacceptable ability to motivate students.

(3) Unacceptable parent/student relations.

(4) Unsuitable teaching methods.

(5) Unacceptable self–control.

Petitioner then requested a private hearing with the Board. This hearing was held on March 28-29, 1979.

On April 4th the Board found just cause to terminate petitioner's contract on the grounds 1) that he had prior knowledge of the reasons for terminations, 2) that the reasons were reasonable, relative to the efficient operation of the school district, 3) that a fair investigation was conducted, 4) that adequate evidence was presented to substantiate his termination, and 5) that the proceedings did not violate his due process

rights. In fact, the parties stipulated that all statutory requirements were followed up to and including the time of petitioner's private hearing before the Board.

Exercising his prerogative under section 279.17, petitioner appealed the Board's decision to an adjudicator who, on June 14, 1979, reversed that decision, found no just cause to terminate petitioner's contract, and ordered the Board to offer him a contract for the 1979–80 school year. The Board rejected the adjudicator's decision and, pursuant to section 279.18, appealed to the Linn County District Court, which reversed the adjudicator's decision and reinstated the Board's decision to terminate petitioner's contract. This appeal followed.

■ I. **Scope of Review.** Since petitioner had been employed by the school district for more than two years, he was a nonprobationary teacher; therefore, the validity of his contract termination is governed by sections 279.15–279.18, and not by section 279.19.

Review of decisions in cases involving termination of teachers' contracts by nonrenewal is governed by sections 279.17 and .18. According to section 279.17, a teacher may appeal a board decision to an adjudicator who shall then

... reverse, modify or grant any appropriate relief from the board action if substantial rights of the teacher have been prejudiced because the board action is: 1. In violation of a board rule or policy or contract; or 2. Unsupported by a preponderance of the competent evidence in the record made before the board when that record is viewed as a whole; or 3. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

In this case, the adjudicator apparently based his decision on a lack of preponderant evidence to support the Board's decision.

Further review is provided in section 279.18, which allows either party to reject the adjudicator's decision and seek review in the district court. That court may grant appropriate relief if petitioner's rights have been harmed because the decision of the board or adjudicator is:

1. In violation of constitutional or statutory provisions; or 2. In excess of the statutory authority of the board or the adjudicator; or 3. In violation of a board rule or policy or contract; or 4. Made upon unlawful procedure; or 5. Affected by other error of law; or 6. Unsupported by a preponderance of the competent evidence in the record made before the board and the adjudicator when that record is viewed as a whole; or 7. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

Here the district court reversed the adjudicator's decision, disagreeing with the latter's conclusion that the Board's decision was not supported by a preponderance of the evidence.

■ The scope of our review of the district court's decision is governed by *Board of Education of Fort Madison Community School District v. Youel*, 282 N.W.2d 677, 679–80 (Iowa 1979), where the court held that an appeal under section 279.18 is at law for the correction of errors under the seven standards set forth above. Our review is limited to those seven grounds; our task is to "make anew the determinations of the district court specified in section 279.18," *Smith v. Board of Education of Fort Madison Community School District*, 293 N.W.2d 221, 223 (Iowa 1980). If our conclusion coincides with that of the district court, we affirm; if it does not, reversal may be in order. *See Briggs v. Board of Directors of Hinton Community School District*, 282 N.W.2d 740, 743 (Iowa 1979).

■ II. **Preponderance of the Evidence.** Petitioner's first assignment of error is that the district court erred in holding, in essence, that the Board's decision to terminate his contract was supported by a preponderance of the competent evidence in the record. We agree with the district court.

The record contains extensive evidence relating to petitioner's teaching abilities and his relationships with the school administration, students and parents. Most of the information came from John Mathre, the principal. Mathre evaluated petitioner's teaching performance once each year from 1974 to 1979. Up to and including 1977, petitioner received favorable comments from Mathre, the only problem being an occasional strain in the teacher–student relationship. In 1978, however, the problem intensified. His rapport with and ability to motivate students were rated "unacceptable." He received a "needs improvement" rating in humanism, self–control, tact and public relations. In 1979 he was deemed "unacceptable" in the latter two categories, as well as the categories of rapport with and ability to motivate students. He was also thought to "need improvement" in his cooperation with the administration.

Mathre also testified before the Board about a number of incidents concerning petitioner both in and out of the classroom. In January, 1978, petitioner told his class not to associate with a certain student at that school because he was a "bad influence." The student became upset and told Mathre that petitioner was trying to take away all his friends. The mother of one of petitioner's students told Mathre that petitioner's yelling in the classroom gave her son headaches and that her son frequently came home from school crying and nervous. Another parent said his daughter disliked school for the first time while in petitioner's class. A third said his daughter was very nervous and became ill and that he later concluded school was making her nervous and upset. The father of one girl testified that his daughter did not get any help from petitioner when she had a problem; she had once raised her hand but petitioner told her to put it down, never asking why she had raised it.

The evidence showed petitioner forced one student against the school building and struck him in the face with his hand. He later told the student in front of his class that he (petitioner) should have struck the student harder and he wished that the stu-

dent was not in his class. On one occasion when Mathre observed petitioner's teaching methods, petitioner told Mathre in front of his class that the students were not doing their assigned work. Petitioner also asked his class to write down their parents' thought of him as a teacher; Mathre thought that would place a lot of pressure on the students.

Although Basic Skills test results are not used as such to evaluate teachers, Mathre thought it significant that petitioner's homeroom students' scores were generally lower than those of the other sixth–grade students. He attributed this poorer performance to the students' poor attitude as a result of being in petitioner's class.

Mathre testified students with emotional or behavioral problems were not assigned to petitioner's class since he was thought unable to handle such students. Mathre also observed petitioner's classroom behavior at times and thought he seemed to be losing his self control; there was too much lecturing, harassing, and loud reprimands. Mathre also thought that petitioner did not listen well and that he tended to be uncommunicative. Petitioner's inability to develop student rapport was thought to affect his students' schoolwork and level of achievement. Mathre concluded with his thought that petitioner did not appear to enjoy teaching very much and that his temperament, emotional makeup, and personality were unsuited to teaching.

Mathre also testified concerning his attempts to deal with petitioner's problems. On May 10, 1978, Mathre spoke with petitioner and suggested petitioner try to handle classroom problems on a more individualized basis instead of reprimanding students in front of the entire class. A few months earlier, in response to parental complaints, he told petitioner not to make judgments about other students and not to tell students who they should avoid in the class. On February 21, 1979, Mathre sent petitioner a note reproving the latter's actions described above concerning his forcing a student against the building and striking him in the face.

Other testimony before the Board was favorable to petitioner. He testified on his own behalf and gave his own version of the various alleged incidents, although he admitted their occurrence for the most part. Three parents testified to their high regard for petitioner and stated that either their children enjoyed his class or they intended to enroll their children in his class in the future.

Mathre admitted some of the students involved in the classroom incidents needed discipline (one mother even testified her son probably got what he deserved from petitioner), but he could not say petitioner's strict and harsh disciplinary tactics were the only or most appropriate way to handle such students.

In light of such evidence, we agree with the Board and the district court. When viewed as a whole, a preponderance of the competent evidence in the record made before the Board and the adjudicator supports the decision to terminate petitioner's contract. While there is certainly evidence showing his abilities as a teacher, the preponderance of the entire evidence indicates he has had continuing problems in dealing with his students, their parents and the school administration, as well as his teaching methods and lack of self control. What was said in *Youel*, 282 N.W.2d at 683–84 is applicable here:

A job separation is seldom attributable to only one party. In the present case there is evidence to refute many of the conclusions reached. Youel disclaimed responsibility for any falling off of his program. We have reviewed the whole record, as the statute directs. We have also accorded weight to the Board's findings, as the statute also directs. We hold that on these disputed facts the preponderance is with the Board.

■ One of petitioner's main arguments is that no one ever spoke to him directly about all of the alleged incidents. However, Mathre testified that he did not need to talk with petitioner every time since they had discussed similar incidents in the past. In any event, it appears petitioner had sufficient notice of the problems and incidents alleged.

■ Petitioner also contends that most of the evidence supporting the Board's action came from Mathre, who related to a large extent what parents and students had told him, and argues that such unreliable hearsay testimony should be accorded little weight. We are not persuaded by this argument. First, petitioner ignores Mathre's testimony based on his own observations of petitioner's classroom behavior. Second, the hearsay character of much of Mathre's testimony is no bar to its consideration by the Board. Section 279.16 provides "[t]he board shall not be bound by common law or statutory rules of evidence or formal rules of procedure, but it shall hold the hearing in such manner as is best suited to ascertain and conserve the substantial rights of the parties." Third, much of the evidence given in petitioner's favor could be subject to the same attacks in that the parents' testimony contained hearsay regarding their children's high regard for petitioner. Finally, petitioner admitted the occurrence of most (if not all) of the incidents, although he gave his own version of what occurred.

■ In its decision making process, the Board must weigh the evidence and the credibility of the witnesses because only the Board makes the findings of fact. Section 279.16; *Youel*, 282 N.W.2d at 682. In viewing the evidence in the record as a whole as required by section 279.18(6), we consider the cumulative effect of the evidence. In doing so, we affirm the district court's finding of just cause to support termination of petitioner's contract.

■ **III. Standard Applied by District Court.** Petitioner next argues that district court erred in applying an improper standard by which to review the Board's decision. He claims the court used a "substantial evidence" standard instead of the more rigorous "preponderance" test required by section 279.18(6). We do not agree. A review of district court's ruling reveals that the court did not refer to the "substantial evidence" test at all. Instead, the court

referred to its duty to reverse "if substantial rights of the petitioner have been prejudiced because the action is unsupported by a *preponderance* of the competent evidence . . ." (emphasis added) and went on to define "preponderance of the evidence." These two references to the preponderance test clearly indicate the court's awareness of and adherence to the statutorily–required test. Thus, no error was committed.

■ **IV. Weight Accorded Adjudicator's Decision.** Petitioner also claims that district court erred in failing to give any weight to the adjudicator's decision. We find no such error.

Initially, we note the judicial review statute (section 279.18) does not require the district court to give any particular weight to the decision of the adjudicator. Rather, the statute states that the court shall reverse the decision of the board or adjudicator when such decision is unsupported by the necessary preponderance. In finding the Board's action justified by the preponderance, district court necessarily found the adjudicator's decision to the contrary to be unsupported, thus requiring reversal of that decision. The district court thus properly followed its statutory mandate under section 279.18.

■ Further, we question whether the adjudicator's decision in this case deserved much weight in any event. First, it is apparent the adjudicator failed to follow the statutory authority in his review of the Board's decision as required by section 279.-17. That section also provides: "In such appeal to the adjudicator, especially when considering the credibility of witnesses, the adjudicator shall give weight to the fact findings of the board, but shall not be bound by them."

From our review of the adjudicator's decision, we conclude he gave no weight to the Board's findings. This is especially apparent in his discussion of the various witnesses. At one point he seemingly dismissed all of Mathre's testimony as worthy of no consideration since it was hearsay and "unsupported by competent and convincing testimony." However, as indicated above,

the hearsay character of evidence before the board is no objection to its consideration by the board. He dismissed another statement made to Mathre by a student's father in the following terms: "Mathre just accepted this frivolous, unsubstantiated statements [sic] as evidence of Fay's incompetence as a teacher, incongruous." It is clear the adjudicator made his own evaluation of the credibility of the witnesses and apparently gave the Board's findings no weight, contrary to section 279.17.

Even more disturbing are the numerous indications of the adjudicator's bias against (if not outright hostility to) Mathre. Representative comments include: "Perhaps Mathre is overloaded with responsibilities as Principal of both the Walker and Coggon schools"; "another example of Mathre's inadequacy as an administrator . . ."; "[i]t is apparent from the whole record that the school administration spent too much time trying to please the whims of every parent and too little time improving educational techniques." Such statements are wholly irrelevant to the adjudicator's narrow duty in this case to determine whether the Board's termination of petitioner's contract was supported by a preponderance of the competent evidence and seem to indicate a personal grudge against school administrators in general or Mathre in particular. In any event, such comments are inappropriate from an adjudicator who is to provide an impartial review of school board decisions.

The district court did not err in failing to give greater weight to the adjudicator's decision.

■ **V. Adequacy of Board's Findings of Fact.** Petitioner finally urges district court error in failing to hold the Board's findings of fact violated section 279.16, because the findings fail to identify the specific facts relied upon by the Board in making is decision. We find no violation of that section which provides, in part, as follows: "Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement. of the underlying facts supporting the findings." *Youel*, 282 N.W.2d at 683, discussed the required level of specificity:

We have recently recommended that administrative agencies make findings sufficiently detailed to properly present the issues and their solution. (citation omitted) We believe this is what the statute [§ 279.16] intended to assure. . . .

See also Erb v. Iowa State Board of Public Instruction, 216 N.W.2d 339, 342 (Iowa 1974) (administrative fact findings "must be sufficiently certain to enable a reviewing court to ascertain with reasonable certainty the factual basis and legal principle upon which the administrative body acted.")

We are satisfied that the Board's fact findings satisfy both section 279.16 and the principles set forth above. The findings consist primarily of summaries of the important testimony given before the Board. They highlight the major areas of concern regarding petitioner's teaching methods and the various incidents in and outside his classroom. While these findings perhaps could have been more succinctly stated, we conclude they are sufficient to apprise petitioner, the adjudicator, the district court, and this court of the facts used by the Board to support its decision to terminate petitioner's contract.

We find no error in the district court's disposition of this case. The Board's decision to terminate petitioner's contract was supported by a preponderance of the competent evidence when viewed as a whole. We therefore affirm the district court.

AFFIRMED.

All Judges concur except OXBERGER, C. J., who dissents.

OXBERGER, Chief Judge (dissenting).

I dissent. The reasons given for termination were not supported by a preponderance of the evidence. The complaints were directed towards Fay's reprimands to his students. The principal thought these reprimands were too loud, lecturesome and harassing. Three parents speculated their children's dislikes and tensions about school were caused by Fay. Differences of opinion as to teaching or discipline methods by the administration do not equal unacceptable behavior to justify termination. Neither does speculative, second-hand testimony of parents. The only valid reason for termination, namely, physical handling of a student, was met by Fay's explanation of the situation.

Fay was not apprised of past complaints when they occurred. This notification is the responsibility of the principal or administration, not only to meet notice requirements, but to improve the teacher's effectiveness. As to the cumulative effect of the evidence, the use of isolated, previously unreported incidents could well cause terminations for many fine teachers in our state. I would vacate district court's decision and reinstate the adjudicator's determination.