Robert J. OLDS, Plaintiff-Appellee,

v.

BOARD OF EDUCATION OF NASHUA COMMUNITY SCHOOL DISTRICT and the Nashua Community School District, Defendants-Appellants.

No. 2–66831.

Court of Appeals of Iowa.

April 8, 1983.

Leslie P. Turner, Nashua, for defendants-appellants.

James L. Sayre of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for plaintiff-appellee.

SCHLEGEL, Judge.

Defendants school board and school district appeal from the judgment of the district court reversing the decision of the board to terminate plaintiff's teaching contract. Defendants assert the court erred in concluding, inter alia, that plaintiff had been denied due process because his hearing was held before a panel which was not impartial and that the termination of plaintiff's contract violated the terms of the master contract between the teachers and

the school board. Defendants also assert that there was just cause to terminate plaintiff's contract. Plaintiff cross-appeals from a subsequent judgment of the trial court awarding him damages, claiming that the court erred in reducing his award by certain amounts earned by plaintiff after the termination of his contract. We reverse on defendants' appeal and dismiss plaintiff's cross-appeal.

On March 7, 1979, plaintiff Robert J. Olds received notice, pursuant to Iowa Code § 279.15, from Superintendent Fred Ruck that he would recommend to the Nashua Board of Education that Olds' teaching contract be terminated. The reason for this recommendation was stated in the notice as follows: "After administrative review of the Nashua Community High School course offerings and teacher assignments, it has been determined that there is a lack of need for your services in the Science Department." Olds requested a private hearing which was held on March 26, 1979, before Board members Dietz, Crofoot, Zwanziger, Ross and Etter. The Board decided to terminate Olds' contract; this decision was affirmed by an adjudicator on August 16, 1979. Olds filed a petition for judicial review, and on February 6, 1980, the court issued its decree finding that Olds' constitutional rights to due process were violated because the school board was not a fair and impartial tribunal in its March 26th hearing. Specifically, the court was concerned about what it thought was excessive questioning of Olds by the Board members and their objections to some of his evidence. The court therefore reversed the decision to terminate the contract and remanded for further proceedings.

On February 25, 1980, Superintendent Ruck sent Olds a new notice of his recommendation to terminate his contract for the same reason as stated in the 1979 notice; i.e. lack of need for his services as a high school science teacher. Olds again requested a private hearing before the Board which was held on March 18, 1980. Three of the members of the 1979 Board (Zwanziger, Ross and Etter) were on the Board again in 1980 along with new members

Catchpoll and Shields. The Board again accepted the superintendent's recommendation and terminated Olds' contract, finding that there was no longer a need for two fulltime high school science teachers; since there was in fact need for only the equivalent of one and one-half science teachers, just cause existed to terminate his contract. Olds again appealed to an adjudicator who affirmed the Board's decision on July 14, 1980. The adjudicator found that low enrollment provided just cause for and was the motivating factor behind Olds' termination and that there was no evidence of animus as alleged by Olds at the hearing. It was also found that the Board had followed the termination procedure set forth in the master contract and that Olds had been afforded due process at the Board hearing.

Olds again filed a petition for judicial review, rejecting the adjudicator's decision, and on April 9, 1981, the court issued its decree reversing the Board's termination of Olds' contract. First, the court expressed its doubts that Olds had yet been heard before an impartial tribunal in that three of the five members of the 1979 Board which had terminated his contract were on the Board again in 1980. The court also questioned whether there was just cause to terminate due to declining student interest in high school science and declining enrollments, emphasizing the fact that a State Department of Public Instruction survey of the science program at the Nashua schools recommended an expansion of the high school science offerings and requirements. The court based its decision, however, on its conclusion that the Board violated the staff reduction provisions of the master contract; specifically, that provision regarding the teacher in the subject area affected with the least seniority as the one to be terminated. The court held that the Board erred in failing to consider and terminate one Carl Laufer, a junior high school science teacher not certified to teach high school science and found to have less seniority than Olds. Finally, the court concluded that Olds was entitled to a hearing on the

issues of damages resulting from his unlawful termination. The Board filed a notice of appeal, but Olds' motion for limited remand to hold the hearing on damages was granted by Justice Uhlenhopp on July 6, 1981. That hearing was held, and on January 4, 1982, the court ruled that Olds was entitled to $50,065 (the amount he would have earned for teaching but for his termination), less $21,562.96 (the amount he actually earned after his termination), for a net figure of $28,502.04. The court also held that Olds' contract with the school district continued in force and effect. Olds then instituted his cross-appeal in connection with his judgment.

I. We explained the statutory mechanism in chapter 279 regarding the termination of teachers' contracts in *Fay v. Board of Directors of North-Linn Community School District,* 298 N.W.2d 345, 347 (Iowa Ct.App.1980), and need not do so in full again here. We do, however, emphasize the limited nature of the district court's role on judicial review of the adjudicator's decision:

> The court shall reverse, modify, or grant any other appropriate relief from the board decision or the adjudicator's decision equitable or legal and including declaratory relief if substantial rights of the petitioner have been prejudiced because the action is:
> 1. In violation of constitutional or statutory provisions; or
> 2. In excess of the statutory authority of the board or the adjudicator; or
> 3. In violation of a board rule or policy or contract; or
> 4. Made upon unlawful procedure; or
> 5. Affected by other error of law; or
> 6. Unsupported by a preponderance of the competent evidence in the record made before the board and the adjudicator when that record is viewed as a whole; or
> 7. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

Iowa Code § 279.18. In this case the court concluded that Olds' termination violated the terms of the Board's master contract with the teachers.

Section 279.18 also provides for further appellate review of the district court's decision on judicial review. Our review is limited to the correction of errors under the seven standards set forth in § 279.18. *Board of Education of Fort Madison Community School District v. Youel,* 282 N.W.2d 677, 680 (Iowa 1979). If our conclusion is the same as that of the district court, we affirm; if it is not, reversal may be in order. *Fay,* 298 N.W.2d at 347. The superintendent has the burden of proving the existence of just cause to justify terminating a teacher's contract. *Munger v. Jesup Community School District,* 325 N.W.2d 377, 379 (Iowa 1982). We determine if the Board's action is supported by a preponderance of the evidence in the record when that record is viewed as a whole. *Wedergren v. Board of Directors,* 307 N.W.2d 12, 20 (Iowa 1981); see Iowa Code § 279.18(6).

II. We must first address the recurring constitutional issue; i.e., the allegation that Olds' right to due process in his hearing before the Board was violated because it was biased against him. Specifically, Olds claims, and the lower court found, that he could not have received a fair and impartial hearing in 1980 before a tribunal, three members of which had voted to terminate his contract in 1979.

There is no question that Olds was entitled, on due process grounds, to a hearing before an impartial board. *Brouillette v. Board of Directors of Merged Area IX, etc.,* 519 F.2d 126, 128 (8th Cir.1975). It does not necessarily contravene due process, however, to permit judges and administrators who have had their initial rulings reversed on appeal to hear and decide the same issues on remand. *Withrow v. Larkin,* 421 U.S. 35, 57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712, 729 (1975). Our supreme court has considered this problem and has set down principles to be followed in cases such as this which involve deciding anew whether to terminate a teacher's contract:

The board must, like a trial court on reversal, lay that finding aside. Any board member who harbors prejudice or predilection should recuse himself or herself. Board members possessing personal knowledge must place it aside or, if they are unable to do so, themselves step aside. The board must be mindful that the decision turns on its own finding of the presence or absence of qualifications and not on the recommendation of an administrator or prior employer—although these may of course be received and considered. *Bishop v. Keystone Area Education Agency No. 1,* 275 N.W.2d 744, 752 (Iowa 1979).

■ Despite the fact that three of the five members of the Board participated in both the 1979 and 1980 decisions to terminate Olds' contract, we believe his rights to due process and a hearing before an impartial tribunal were not violated here. Before the 1980 hearing began, Olds' attorney questioned all five Board members separately and extensively, especially the three who were on the 1979 Board. Without exception, all members stated their ability to keep an open mind and that there was no reason they could not decide the termination question impartially and only on the basis of the evidence to be presented later at that hearing. The three members of the 1979 Board were asked to consider carefully their ability to measure up to the *Bishop* guidelines; they concluded that they could fairly decide the issue anew even though they were inclined to believe at that point that their 1979 decision was still correct. Olds gives us no reason to doubt the statements of the Board members other than his own belief that it could never impartially decide his case. We reject that unfounded belief and conclude that his due process rights were not violated. The district court erred in concluding otherwise.

III. We next consider whether the Board's termination of Olds' contract violated the staff reduction provisions of the master contract. The district court found a violation and on that basis reversed the decisions of the Board and the adjudicator to terminate the contract. We conclude that the Board's action did not violate the master contract.

The relevant provisions of the contract are contained in article XI—Reduction or Realignment of Staff:

C. *Reduction Procedures*

Step 1 The Board shall attempt to accomplish staff reduction through normal attrition.

Step 2 Employees with emergency or temporary certification will be laid off first.

Step 3 Probationary teachers shall have no seniority during their first 2 years in the district and will be laid off next.

Step 4 Fully certified employees properly endorsed by the State of Iowa in the curricular or subject area affected and with least seniority in the school district shall be laid off next, subject to the following provisions.

\* \* \* \* \* \*

D. *Definitions*

\* \* \* \* \* \*

"Curricular or subject area" shall mean teachers in the following categories: Elementary-art, music, physical education, librarian, counselor, remedial reading, developmental math, teaching grades K–6. Grades 7–12—art, business education, counselor, foreign language, home economics, industrial arts, English, librarian, mathematics, physical education, science, social studies, vocational agriculture, and music.

There is no dispute that Step 4 of the "Reduction Procedures" is the applicable provision in this case that we must construe; the record does not indicate the availability of attrition or teachers with emergency or temporary certification, and Olds has more than two years seniority and thus is not a probationary teacher (*see* Iowa Code § 279.19).

At this point it becomes necessary to elaborate on the factual background. At all relevant times there were only two teachers certified to teach high school science (grades 9–12)—Olds and a Mr. Kunzman. Neither was certified to teach in any

area other than science. In addition, the school had one junior high science teacher (grades 7 & 8)—Carl Laufer—who had a general certificate to teach grades K through 9; he was not certified to teach high school in general or high school science in particular. Laufer was not specifically endorsed to teach science, but did have endorsements to teach physical education, driver's education and industrial arts. When Superintendent Ruck decided to terminate one high school science teaching position (because of a perceived lack of need for two full-time positions in that area), he considered only Olds and Kunzman in determining whose contract to terminate; he did not consider Laufer. Since Olds had less seniority (four years at the time of the 1979 termination notice) than did Kunzman (ten years), it was decided to terminate Olds' contract under Step 4 of Article XI(c) of the master contract.

Olds contends that, under Article XI, Laufer is the one whose contract should have terminated and not Olds'. His argument is as follows: in determining whose contract to terminate, step 4 requires a comparison of those "fully certified employees properly endorsed . . . in the curricular or subject area affected." Paragraph D of Article XI defines "curricular or subject area" in part as "Grades 7–12— . . . science . . ." Laufer is a science teacher in grades 7 and 8 and is therefore "in the curricular or subject area affected" (science, grades 7 through 12) and should be considered for termination; however, he is not "fully certified" to ·teach high school science, and therefore, has no seniority and should have been terminated instead of Olds. The district court accepted this analysis and ruled that the Board's termination of Olds' contract instead of Laufer's violated the master contract.

We believe this argument to result from a rather strained interpretation of the master contract. The result is anomalous, to say the least. Even though Laufer is not certified to teach high school science (the subject area immediately affected), he is drawn into the pool of candidates for termination because he fits within the general

category of grades 7 through 12 science. Then, he is determined to have no seniority in an area he is not certified to teach— again, high school science—and therefore, should be terminated. According to Olds, Laufer either does or does not fit within step 4 of the reduction procedures, depending on Olds' purpose.

We cannot believe that the parties to the contract intended it to be construed in such a forced manner. The Board and the adjudicator correctly construed step 4 to require only a consideration of Olds and Kunzman. Only those two teachers are "fully certified employees properly endorsed . . . in the curricular or subject area affected," i.e., grades 7 through 12 science. Since Laufer is not "fully certified" to teach high school science (he only has a general K–9 certificate), he is not "fully certified" to teach grades 7–12 science, and therefore does not fit under step 4 for purposes of consideration in this termination decision. We adopt the adjudicator's conclusion that "[t]he word 'area' cannot reasonably be construed to mean any and all of the courses in the sciences between grades 7 and 12 to the disregard of the state's licensure requirements." The district court erred in concluding that Olds' termination violated the master contract.

IV. The district court did not rule on whether there was just cause to terminate Olds' contract; such a ruling was unnecessary in view of the court's holding regarding the staff reduction provisions of the master contract. The court, however, did express its doubt that there was just cause, leading us to believe that it would also invalidate the Board's action on that basis if we were to remand for a finding on that issue. Both parties have addressed the just cause issue in this appeal. To avoid the costs involved in a possible future appeal on this issue, we will address it now.

The "just cause" requirement arises from Iowa Code § 279.15(2) which states that the notice and recommendation to terminate "shall contain a short and plain statement of the reasons, which shall

be for just cause, why the recommendation is being made." "Just cause" is not limited to cases of teacher misconduct or incompetence, but includes as well legitimate consideration relating to the school district's personnel and budget needs. *Briggs v. Board of Directors of Hinton Community School District*, 282 N.W.2d 740, 742 (Iowa 1979). Thus, there is no question, and the parties here do not dispute, that the Board's stated reason for terminating Olds' contract (lack of need for his services) is a legitimate one. The burning question is whether the Board sustained its burden of proving by a preponderance of the competent evidence that there was, in fact, a lack of need for Olds' services as a full-time high school science teacher. We conclude that it did and therefore there was just cause for the Board's action.

We again examine the record made before the Board. In doing so, it is important to keep in mind our limited scope of review—we determine only whether the Board's action is supported by a preponderance of the competent evidence in the record made before the Board when that record is viewed as a whole. Iowa Code § 279.18(6). We do not judge the wisdom of the Board's action, nor can we force the Board to adopt a policy which we may think is preferable. We, like the district court, must leave policy decisions (such as the makeup of a high school science program), up to the Board subject, of course, to a teacher's constitutional, statutory and contractual rights.

Superintendent Ruck testified before the Board that, after studying enrollment figures in the various high school science courses in the spring of 1979,[1] he concluded that some of the sections could be consolidated for the 1979–80 school year and thereafter, resulting in a more efficient and economical operation of the high school science department. The 1978–79 enrollment figures referred to are as follows:

| PERIOD | COURSE | 1st SEMESTER STUDENTS | 2nd SEMESTER STUDENTS |
|--------|--------|------------------------|------------------------|
| 1 | Biology | 19 | 12 |
| 2 | Physics | 15 | 13 |
| 2 | Ecology | 15 | 20 |
| 3 | 9th Science | 21 | 21 |
| 3 | Chemistry | 9 | 7 |
| 5 | 9th Science | 22 | 20 |
| 5 | Biology | 9 | 13 |
| 6 | 9th Science | 24 | 25 |
| 7 | 9th Science | 19 | 19 |
| 7 | Chemistry | 8 | 7 |
|  |  | 161 | 157 |

Ruck concluded that these ten science classes could be consolidated into seven by combining the two biology sections into one, combining the two chemistry sections into one, and combining the four 9th grade science sections into three. This consolidation would mean that two full-time high school science teachers would no longer be needed; the need would be reduced to one and one-half teachers. Olds was in fact offered a half-time teaching contract at the time, but he did not accept it. Ruck testified that this consolidation plan arose not so much from declining enrollments as from the low number of students in individual science classes or sections.

Ruck studied enrollment figures in other subject areas as well. Lloyd Koob, the high school principal, testified that there was consolidation of some U.S. history and vocational agriculture classes, but there was no need to reduce the teaching staff in those areas. Other subjects had small enrollments but were not susceptible to consolidation because there was only one section each of those other subjects.

On the basis of this evidence, we agree with the Board and the adjudicator that there was no longer a need for two fulltime high school science teachers and, therefore, there was just cause to terminate Olds' contract. Olds places great weight upon the fact that an analysis of the Nashua high school science program by the state Department of Public Instruction recommended an expansion of that program and requiring each student to have two years of high school science instead of one year as cur-

---

1. Since the purpose of the Board hearings was to determine whether Olds should have been terminated after the 1978–79 school year, we do not consider the science enrollment figures for 1979–80 which Mr. Ruck presented at the 1980 hearing.

rently required. It is not disputed, however, that the Board is not required to accept the DPI recommendation. Ruck testified that the State is not always aware of local circumstances when it makes its recommendations; for example, in the Nashua School district, there is more interest in vocational education than there is in college preparatory classes like the higher level science courses. In any event, we will not second-guess the Board's decision not to follow the DPI recommendation in a policy area such as this. We adopt the adjudicator's conclusion in this regard as our own:

The adjudicator has no authority to decide which is the wiser policy. Iowa law leaves educational policy to school boards. On the other hand, this discretion is not a blank check to override the legitimate interests of teachers in job security. Accordingly, the test for the adjudicator is whether this policy choice was characterized by an abuse of discretion, was a clearly unwarranted exercise of discretion, or otherwise was arbitrary and capricious. In the adjudicator's opinion, though strong arguments can be made contravening the board's policy choice, that choice does not manifest such a lack of reasoned thought to come within the statutory language reagarding abuse of discretion as to warrant reversal of the board.

V. We, therefore, reverse the district court's ruling of April 9, 1981, which found that Olds was denied due process in his 1980 hearing before the Board and that the Board's action in terminating his contract violated the staff reduction provisions of the master contract. We also conclude that there was just cause to terminate Olds' contract. The Board's decision and the adjudicator's ruling affirming the Board are reinstated. Since Olds' termination was lawful, he is entitled to no damages for wrongful termination. Therefore, the district court ruling of January 4, 1982, which awarded him damages, is vacated and Olds' cross-appeal from that award is dismissed.

REVERSED ON APPEAL; CROSS–APPEAL DISMISSED.

All Judges concur except OXBERGER, C.J., and JOHNSON, J., who dissent.

OXBERGER, Chief Judge (dissenting).

Because I disagree with the majority's analysis in three crucial areas, I respectfully dissent from its conclusions in this case.

## I. Due Process

The majority agrees that Olds was entitled, on due process grounds, to a hearing before an impartial panel. It properly cites *Bishop v. Keystone Area Education Agency No. 1*, 275 N.W.2d 744, 752 (Iowa 1979), in support of the proposition that in deciding anew whether to terminate a teacher's contract, the board must lay its earlier finding aside, any member harboring prejudice of *predilection* being required to recuse himself or herself. And then, in the face of clear evidence that three of the five board members *did* harbor such prejudices and predilections, the majority concludes that the board was impartial.

The record demonstrates that board members Ross, Zwanziger, and Etter all testified, on voir dire, that the decision they had made a year earlier was correct, and indicated that they believed that the burden was upon Olds to demonstrate that his employment should not be terminated. The burden of proof was not upon the teacher, but upon the administration; and the clear admission of the three board members of their belief to the contrary denied Olds due process.

## II. The Contract

The majority's construction of Article XI of the contract is inconsistent with the plain meaning of the words in that article. It is forced and unconvincing.

Step 4 of the reduction procedures provides:

Fully certified employees endorsed by the State of Iowa in the *curricular or subject*

*area affected* and *least seniority in the school district* shall be laid off next.... (emphasis added).

"Curricular or subject area" is then divided into two general categories, one applying to grades K through 6, and other to grades 7 through 12, with specific subject areas, such as science falling under each of them.

The plain meaning of the contract would thus lead to the following conclusions:

The credentials and seniority of *all* of the science teachers—*i.e.,* those who *teach science,* which is the "subject area affected"— between the grades of 7 and 12 *anywhere in the school district* must be examined. That teacher who has the least seniority would be the first to be terminated. Only those teachers who are fully certified and endorsed in that particular subject area could have seniority in that area.

At the time this matter arose, there were three teachers in the science area in grades 7 through 12: Olds, Kunzman, and Lauger. Olds and Kunzman were both certified teachers who were endorsed to teach science on the high school level. Laufer was not. Laufer merely had a general certificate for teaching in grades K through 9, and was endorsed to teach physical education, driver's education, and industrial arts. Since Laufer was teaching science, but was not endorsed in that area, it follows that under the provisions of the contract, he had no seniority in the "subject area affected," and should have been first in line for termination, as the district court concluded.

The majority, calling this interpretation strained and alleging that it would lead to anomalies, overlooks the consequences of its own interpretation: A person who is not endorsed to teach a particular subject area automatically becomes immune to termination when he teaches classes in that area, while those who *are* so endorsed are laid off first. The good fortune of such unendorsed teachers would surely be translated into the misfortune of their students, who would be deprived of the professional services of teachers who had spent the money, time, and effort to become specialists in their teaching fields.

Moreover, a teacher who had been endorsed to teach, say, science, and was teaching computer science in the math department might find that he was terminated because he had the least seniority among those who were endorsed to teach science, an area of declining enrollment, despite the fact that he was in fact teaching computer science, an area of rising enrollments.

I cannot believe that such anomalous conclusions were intended by the authors of the contract. On the contrary, if we stick to the plain meaning of the document, we reach the same conclusion as that reached by the district court: that under the contract, if anyone was to be terminated, it would have had to be Laufer rather than Olds, since Laufer had *no* seniority in the subject matter affected, as opposed to Olds, who had *some* seniority.

### III. Just Cause

In *Briggs v. Board of Directors,* 282 N.W.2d 740, 753 (Iowa 1979), the supreme court defined "just cause" as "one which directly or indirectly significantly and adversely affects what must be the ultimate goal of every school system: high quality education for the district's students.... It must include the concept that a school district is not married to mediocrity."

The majority's construction of this contract would stand this definition on its head, and confer special benefits upon teachers who are not endorsed in their subject areas, lead to the early termination of teachers who are so endorsed, and subject students who are interested in learning about physics, chemistry, or biology to teachers who are skilled wrestling coaches and driving instructors. I cannot conceive of a surer path to mediocrity, both in our schools and in society at large.

The record simply does not support the majority's conclusion that there was just cause for the board's finding. No enrollment data were furnished to bolster the administration's contention that enrollment declines required a reduction of science teaching staff. There is no evidence that

the school district was suffering financial exigency. On the contrary, the Department of Public Instruction and the North Central Association had recommended *enlargement* of the district's high school science curriculum. The board's response was to *cut* it.

Olds's constitutional, statutory, and contractual rights were trampled upon by the board. The district court has properly attempted, on two separate occasions, to vindicate this teacher's rights. The majority's arguments for reversing are unpersuasive. I would affirm.

JOHNSON, J., joins this dissent.